**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MUHAMMED QASIM, *et al.*, | ) ) ) | |
| *Petitioners*, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1779 (JDB) |
| GEORGE W. BUSH,  President of the United States,  *et al.*, | ) ) ) ) ) | |
| *Respondents*. | ) | |

---

**PETITIONERS' MEMORANDUM SHOWING CAUSE WHY PETITION FOR WRIT OF *HABEAS CORPUS* SHOULD NOT BE DISMISSED FOR LACK OF "NEXT FRIEND" STANDING**

---

Petitioner Muhammed Qasim ("Petitioner" or "Petitioner Qasim") seeks a writ of *habeas corpus* to challenge his unlawful detention by the United States Government at Guantánamo Bay Naval Station ("Guantánamo"). He acts on his own behalf and through his Next Friend, Isa Ali Al-Murbati ("Mr. Al-Murbati"), his friend and also a prisoner at Guantánamo. Mr. Qasim is being held without basis, without charge, without access to counsel, and without being afforded any fair process by which he might challenge his detention. He is being held by color and authority of the Executive Branch, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a writ of *habeas corpus* compelling Respondents either to release Petitioner Qasim or to establish before this Court a lawful basis for Petitioner Qasim's detention.

On August 10, 2005, Mr. Qasim, through his Next Friend Isa Ali Al-Murbati, filed a petition for writ of *habeas corpus* in this Court. A copy of Mr. Al-Murbati's Authorization is attached as Exhibit 1. On September 23, 2005, Respondents filed a Motion to Show Cause why the petition for *habeas corpus* should not be dismissed for lack of proper "Next Friend" standing, or, in the alternative, an order to stay the proceedings pending related appeals ("Show Cause Motion"). The Court (Oberdorfer, J.) issued an Order to Show Cause on November 4, 2005 and also ordered the parties to confer with one another and Magistrate Judge Kay of the United States District Court for the District of Columbia to discuss the undersigned counsel's access to Petitioner Qasim to determine if he will authorize counsel to represent him directly. Petitioner, through his undersigned counsel, submit this memorandum demonstrating that the petition for *habeas corpus* should not be dismissed, and that no stay should be entered to the extent that it would prohibit Respondents from filing a factual return to the petition, and prohibit counsel from traveling to Guantánamo Bay and conferring with Petitioner.

On June 28, 2004, the United States Supreme Court held in *Rasul v. Bush*, 542 U.S. 466, 480 (2004), that those in custody at Guantánamo are entitled to *habeas corpus* review by U.S. District Courts. Standing exists for this Court to review Petitioner Qasim's petition because (a) the Respondents' conduct and the circumstances of Petitioner Qasim's detention severely impede his access to his family, his attorneys and this Court and create the need for Next Friend petitions; (b) Petitioner Qasim's petition satisfies the *Whitmore* standards; and (c) the Respondents' conduct and the

circumstances of Petitioner Qasim's detention provide cause for the Court to excuse any alleged defects in his allegations of standing and to order Respondents to cooperate in affording security-cleared counsel an opportunity to consult with Petitioner Qasim and his next friend, Mr. Al-Murbati, during an upcoming approved counsel visit with another client in Guantánamo the week of December 12, 2005.  For these reasons, this Court should recognize Mr. Al-Murbati's Next Friend standing and afford judicial review of Petitioner Qasim's *habeas* petition challenging the legality of his detention at Guantánamo.

## ARGUMENT

### I. THE SUPREME COURT HAS RULED THAT PETITIONERS HAVE THE RIGHT TO FILE *HABEAS* PETITIONS WITH THE ADVICE AND ASSISTANCE OF COUNSEL

The United States Supreme Court has unequivocally stated that the federal *habeas* statute "confers on the District Court jurisdiction to hear petitioners' *habeas corpus* challenges to the legality of their detention at the Guantanamo Bay Naval Base." *Rasul v. Bush*, 542 U.S. 466, 480 (2004) (plurality opinion, O'Connor, J.).  In rejecting the Government's post-*Rasul* argument that detainees have no right to counsel, Judge Kollar-Kotelly of the United States District Court for the District of Columbia recognized that "the Supreme Court has found that Petitioners have the right to bring their claims before this Court, and the Court finds that *Petitioners cannot be expected to exercise this right without the assistance of counsel*." *Al Odah v. United States*, 346 F. Supp 2d 1, 8 (D.D.C. 2004) (emphasis added).  As the Court explained:

> The detainees have been virtually incommunicado for nearly three years without being charged with any crime. To say that Petitioners' ability to

> investigate the circumstances surrounding their capture is "seriously impaired" is an understatement. The circumstances of their confinement render their ability to investigate nonexistent. Furthermore, it is simply impossible to expect petitioners to grapple with the complexities of a foreign legal system and present their claims to this Court without legal representation. Petitioners face an obvious language barrier, have no access to a law library and almost certainly lack a working knowledge of the American legal system." *Id*. (quoting *Battle v. Armontrout*, 902 F.2d 701, 702 (8th Cir. 1990).

Under *Rasul*, Petitioner Qasim has a right to challenge the legality of his detention in federal court with the assistance of existing *pro bono* counsel. Accordingly, Petitioners' Next Friend relationship should be recognized and permit habeas review of the legality of Petitioner Qasim's detention.

    **II.    THE RESPONDENTS' CONDUCT AND THE CIRCUMSTANCES OF PETITIONER QASIM'S DETENTION SEVERELY IMPEDE HIS ACCESS TO HIS FAMILY, HIS ATTORNEYS AND THIS COURT AND BOLSTER THE NECESSITY OF RECOGNIZING PETITIONERS' NEXT FRIEND RELATIONSHIP AS LEGITIMATE**

Petitioner Qasim has been detained and imprisoned by Respondents at the U.S. Naval Base at Guantánamo, Cuba, for an undetermined time, possibly as long as 3½ years. The very need for Mr. Al-Murbati to act as Petitioner Qasim's "Next Friend" is due to Respondents' *own* policies at Guantánamo. For example, Petitioner Qasim has been held virtually incommunicado at Guantánamo, in isolation from external friends and family. *See* Declaration of Clive Stafford Smith, ¶ 46, attached hereto as Exhibit 2 ("Smith Declaration"). Respondents have refused to divulge the names of the Guantánamo detainees, their countries of origin, or the names of their relatives. *Id*. at ¶ 14. As a matter of policy at Guantánamo, many detainees do not have access to pen and paper. *Id*. at ¶ 95. Those that have access to writing implements face an intentionally

inconsistent and unreliable mail system, which is characterized by the non-delivery of mail or delivery delays of up to five months. *Id*. at ¶ 80.

Like other detainees, Petitioner Qasim has no contact with the news media or any word from outside the closed Guantánamo prison system during the length of his imprisonment. *See id.* at ¶ 46. Most likely, he does not speak English. Petitioner Qasim has had no criminal charges brought against him. He has every reason to rely on his friendships with other prisoners who speak his language and suffer under the same disabilities.

Because of Respondent's policies at Guantánamo, Petitioner's family members are also unknown to outsiders, and in almost all cases unreachable by prisoners themselves, making it necessary for him to rely on fellow inmates for access to courts. *See* Declaration of Barbara Olshansky, filed in *Al Wirghi, et al., v. Bush, et al.,* Civ. Action No. 05-cv-1497 (RCL), ¶ 5, attached hereto as Exhibit 3 ("Olshansky Declaration"). No party outside Guantánamo is allowed to know the specific camp or building in which Petitioner is being imprisoned, or the "grade" or "level" of penal detention he occupies, each level being determinative of the privileges he receives. Petitioner Qasim has no expectation of release, ever, and he has every reason to challenge his confinement. The very disabilities which prevent Petitioner Qasim from contacting external friends and family or an attorney are imposed by Respondents themselves.

According to the Department of Defense, the only counsel currently provided access to the detainees are counsel who are employed or retained by or on behalf of a

5

detainee for purposes of representing the detainee in *habeas corpus* or other litigation in federal court in the United States…." *See* Letter to Mr. Shayana Kadidal, dated November 2, 2004, Exhibit E to Olshansky Declaration. Therefore, under Respondents' own procedures, counsel must first file a *habeas corpus* petition on behalf of a detainee in order to meet with the detainee, and the only petition that counsel can file before such a meeting is a next friend petition, *see* 28 U.S.C. § 2242.

Until required otherwise by the Supreme Court's decision in *Rasul*, Respondents refused to provide any prisoner access to legal counsel to pursue a *habeas* petition, and refused them access to courts even via "Next Friend" standing. Now that many of the Guantánamo detainees, including Petitioner Qasim, seek *habeas* review in federal court via "Next Friend" standing subsequent to *Rasul*, Respondents are attacking the validity of this time-honored mechanism for judicial review of prisoners denied adequate access to the courts. Under the unique circumstances of Petitioner Qasim's detention, however, this Court should recognize Petitioners' Next Friend relationship and permit judicial review of the legality of Petitioner Qasim's detention.

### III. PETITIONERS HAVE SATISFIED THE *WHITMORE* STANDARDS FOR "NEXT FRIEND" STANDING

In support of their Show Cause Motion, Respondents argue that Petitioner Qasim has sufficient access to the federal court to pursue a habeas petition directly on his behalf and that Mr. Al-Murbati lacks a significant enough relationship with Petitioner Qasim to act in Petitioner's best interest. Yet, as discussed above, Petitioner Qasim has either provided ample evidence of his inability to access the federal courts, or counsel should be afforded the opportunity to consult with Petitioner Qasim to obtain additional

evidence of his inability to do so, which Respondents fault Petitioner for not presenting. *See* Respondents' Motion for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing, or In the Alternative, To Stay Proceedings Pending Related Appeals, *Qasim, et al., v. Bush, et al.*, Civ. Action No. 05-cv-1779 (JDB), filed Sept. 23, 2005, at 8 ("Show Cause Motion"). Further, Petitioners' have established that Mr. Al-Murbati intends to act in Petitioner Qasim's best interest, and willingly placed himself at risk by signing an authorization to act on Petitioner Qasim's behalf. Nothing in the record suggests that Mr. Al-Murbati seeks to pursue generalized interests in conforming the Respondent's conduct to the law; rather, Mr. Al-Murbati seeks to assist Petitioner Qasim specifically to secure legal representation to file a *habeas* petition challenging his detention in federal court. Accordingly, Petitioner satisfies the requirements of *Whitmore*, and the Court should review Petitioner Qasim's *habeas* challenge to the legality of his detention.

In *Whitmore v. Arkansas*, 495 U.S. 149, 161-64 (1990), the Supreme Court set forth a summary of the "Next Friend" standards to which lower courts have generally adhered. Such standing is granted when a Petitioner cannot access the federal courts and an individual seeks to act on behalf of the prisoner's best interests:

> (d)ecisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for "next friend" standing. First a "next friend" must provide an adequate explanation – such as inaccessibility, mental incompetence, or other disability – why the real party in interest cannot appear on his own behalf to prosecute the action (citations omitted). Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate (citation omitted), and it has been suggested that a

7

<p style="padding-left: 2em;">"next friend" must have some significant relationship with the real party in interest (citation omitted).</p>

*Id.* at 163-164.

The principle theory of *Whitmore* underlying the two-pronged test is that the "Next Friend" mechanism is meant to provide access to courts for those who are unable to seek relief themselves. It finds its way into the first prong as a requirement that the "Next Friend" explain why the party in interest suffers from inaccessibility.

As to *Whitmore's* first requirement, the Ninth Circuit has specifically recognized that detainees held at Guantánamo, such as Petitioner Qasim can be categorized as *inaccessible*:

> [I]t is evident that the detainees are being held in a secure facility in an isolated area of the world, on a United States Naval Base in a foreign country, to which United States citizens are severely restricted from traveling…. As stated by the district court, and conceded by the Government at argument, "from a practical point of view the detainees cannot be said to have unimpeded or free access to court."

*Coalition of Clergy v. Bush*, 310 F.3d 1153, 1161 (9th Cir. 2002) (quoting *Coalition of Clergy v. Bush,* 189 F. Supp. 2d 1036, 1042 (C.D. Cal. 2002)).

In support of their Show Cause Motion, Respondents seek to avoid the practical impact of this detention and the well-documents impediments to prisoners' contact with the outside world by arguing that "all detainees have been notified of their right to submit petitions for writ of habeas corpus; that they have the ongoing opportunity to send mail to family, friends, and the Court; and that the ABA has agreed to offer the detainees assistance in securing legal representation." *See* Show Cause Motion, at 8; *see also* Show Cause Motion, Declaration of Frank Sweigart, ¶¶ 3-5 and Exhibits A, B and

C ("Sweigart Declaration"). The notification provided by the Department of Defense fails to sufficiently explain to a foreign citizen, imprisoned *incommunicado* for years and unfamiliar with the U.S. legal system, exactly how to access a lawyer or the courts.

Moreover, the fact that some petitioners have gotten an address for a lawyer from fellow prisoners with legal representation and written lawyers directly, or the fact that some petitioners wrote such letters to the court that were filed as *pro se* habeas petitions, does not establish that every prisoner at Guantánamo has adequate access to the court. An individual who is illiterate or confused by the DOD notification, might instead verbally communicate his wish for counsel to a fellow prisoner, as Petitioner Qasim did. In some cell blocks, one prisoner may have some familiarity with the law and assist the other prisoners in that cell block to send letters to the court, perhaps explaining why many prisoners wrote their letters, which became *pro se* habeas petitions, at the same time. Prisoners at Guantánamo, who speak no English, who may or may not be literate, who likely do not know what *habeas corpus* means, who have no familiarity with the American legal system and who have no knowledge how to file a paper in federal district court, cannot possible be viewed as having adequate access to federal courts based on the DOD notification and the ability of a small number of prisoners to file *pro se* petitions. Numerous circumstances exist at Guantánamo that explain why certain, fortunate detainees have directly secured legal counsel or have accessed the courts, and yet Petitioner Qasim seeks to act through a Next Friend.

Ironically, Petitioner Qasim may also have understood the DOD notification very well and thought that he was successfully securing legal counsel pursuant the procedures in the notification. The DOD notification to the prisoners states, *inter alia*:

> *You may ask a friend or family member or a lawyer to file such a petition with the Court.* If you do not have a lawyer or a family member or a friend who could file this petition for you, you may file your own petition.

*See* Show Cause Motion, Exhibit A to Schweigart Declaration (emphasis added). Petitioner Qassim did exactly as the notifications provide: He asked a friend, Mr. Al-Murbati to ask his counsel to secure representation for Petitioner Qasim and file this Petition on his behalf. The authorization by Mr. Al-Murbati therefore constitutes *prima facie* evidence of standing in accordance with the notifications given by the Respondents. These facts are sufficient to establish Mr. Al-Murbati's Next Friend standing, or at the least, to allow counsel to consult with Petitioner Qasim and his Next Friend, Mr. Al-Murbati.

As to *Whitmore's* second requirement, whether the next friend is truly dedicated to the best interests of the person on whose behalf he seeks to litigate, the interests of Mr. Al-Murbati and Petitioner Qassim could not be more strongly aligned. The similarity of treatment received by Mr. Al-Murbati, the common faith, language and uncertain legal status only enforce the reliability of Mr. Al-Murbati's status as a next friend. Petitioner Qasim expressly requested Mr. Al-Murbati's assistance to secure counsel. It can hardly be said that a fellow prisoner, who suffers from the same indefinite detention as Petitioner and has spoken with Petitioner during their incarceration, creates a risk that he is an "intruder or uninvited meddler" pursuing "only

10

a generalized interest in constitutional governance." *Whitmore*, 495 U.S. at 164. By signing the Authorization in the face of his own detention, Mr. Al-Murbati has made it quite clear in the most concrete way possible that he desires to help Petitioner Qasim and, in so doing, is willing to take the risk of prolonging his own detention or of making it more difficult.

In light of the extreme isolation of the Guantánamo detainees from family, friends, counsel and the world, a fellow detainee is almost certainly the only practicable next friend. For most, if not all of detainees, family members or friends outside Guantánamo are entirely out of reach. Those family members who were accessible and who had the means of contacting lawyers in the United States on behalf of their imprisoned relatives have done so and numerous habeas petitions have been filed in this manner. But after nearly four years of detention, many of the prisoners who have not previously been able to contact their families have now lost touch with them. Under these circumstances, the willingness of one detainee to act on behalf of a friend is powerful evidence of a significant relationship to satisfy the second prong of *Whitmore*, a relationship only enhanced by the historically unprecedented conditions of detention.[1]

Petitioner has satisfied the two-pronged requirements of *Whitmore* because the court is inaccessible to him directly and Mr. Al-Murbati seeks to act in his best interest. Accordingly, this Court should recognize Mr. Al-Murbati's Next Friend standing and

---

[1] In all events, the existence of a "significant relationship" should be just one factor for consideration in assessing a would-be next friend. *See Coalition of Clergy v. Bush*, 310 F.3d at 1166 (Berzon, J., concurring); Belk, *Next Friend Standing and the War on Terror*, 53 DUKE L.J. 1747, 1775-1778 (2004).

permit Petitioner Qasim to challenge the legality of his detention pursuant to his petition for writ of *habeas corpus*.

> IV. **PETITIONERS ACTED IN ACCORDANCE WITH RESPONDENTS' OWN PROCEDURES IN SECURING A NEXT FRIEND TO REPRESENT THEM**

In support of their Show Cause Motion, Respondents now attack the very process they themselves established. The written notifications Respondents cite specifically state "you may ask a *friend*…to file such a petition with the Court." *See* Show Cause Motion, Declaration of Frank Sweigart, Exhibit B, at ¶¶ 3-5 and attached exhibits (emphasis added). In other words, the first option is the next friend option. If that option is not open, *then* the notifications allow for *pro se* petitions: "If you do not have a lawyer or a family member or a friend who could file this petition for you, you may file your own petition." *Id*.

Respondents are not only bound by the very procedures they offered to Guantánamo prisoners, but, until quite recently, they explicitly admitted the propriety of fellow detainees acting as legitimate "next friends" without regard to the fulfillment of the *Whitmore* guidelines. *See* Respondents' Motion to Dismiss in *John does 1-570 v. Bush*, 05-CV-0313 (CKK) (D.D.C.) at pp 15-16. In that Motion, Respondents disputed an attempt by attorneys to pursue a petition for a writ of *habeas corpus* on behalf of 570 nameless inmates at Guantánamo and moved for dismissal, citing *Whitmore* for the principle that the attorneys had not been authorized by the nameless inmates and lacked a significant relationship with them. To attack this *John Doe* attempt at representation, Respondents argued that the "vast majority of these detainees have filed petitions

through other individuals acting as *legitimate next friends* – family members, an attorney who already represented the detainee in pending military commission proceedings, *and fellow detainees*." Show Cause Motion, at 15-16 (emphasis added). In the present case, however, Respondents take a contradictory position and now seek to challenge that which they previously argued was proper method for a detainee to obtain access to the court.

Incredibly, Respondents, who have interrogated the detainees and hold all of the information about them, now argue that "the phenomenon of detainees filing petitions purportedly on behalf of other detainees about whom they have little knowledge presents the practical difficulty of identifying the detainees for whom *habeas* relief is sought." Show Cause Motion, at 12. This argument is without merit. Indeed, as Judge Roberson has already perceived, the Government has a data base for all of the detainees.[2] Respondents' argument that it is "difficult to identify" the detainees is a transparent attempt to further obstruct Petitioners' access to the courts. The Respondents' refusal to provide any information about the detainees is wholly unreasonable and another reason why they should be held to their previous position that detainees may have a friend, including a fellow detainee, file a petition on their behalf.

---

[2] At the August 1, 2005, status conference involving Uighur detainees who had been cleared as "No Longer Enemy Combatants," the Court held this colloquy with the Respondents' counsel, Terry Henry:  THE COURT: Oh, I think you've got a database. How many people are down there? MR.HENRY: A little over 500. Your Honor, I'm telling you, as- THE COURT: It's easy, isn't it? MR.HENRY: I don't know, Your Honor. It involves our inquiry to the client and that sort of thing. Transcript at 21-22, August 1, 2005 Status Conf., *Qassim v. Bush*, CV 05-497(JR).

## V.  *HABEAS CORPUS* PROCEEDINGS MUST NOT BE ALLOWED TO FOUNDER IN A PROCEDURAL MORASS

Our government has never before done what it has allegedly done here: imprisoned people without charging them with any wrongdoing; held them in physical isolation; deliberately impeded their access to counsel; subjected them to physical abuse and other mistreatment; and refused even to disclose their identities to the outside world so that legal, humanitarian, and medical assistance could be provided.  Now, even though counsel has been secured and a petition filed, the Government seeks to prevent this Court from knowing who the Petitioner is or allowing this case to proceed based solely on what, at best, can be characterized as a matter of form.

If there are concerns regarding Next Friend standing in this case, they are due to actions by Respondents, and should be excused.  As the Supreme Court has repeatedly recognized, "[t]he writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. *Harris v. Nelson*, 394 U.S. 286, 290-91 (1969).  For that reason, the Court has made clear, "a habeas corpus proceeding must not be allowed to founder in a 'procedural morass.'" *Id*. at 291-92 (quoting *Price v. Johnston*, 334 U.S. 266, 269 (1948)). It is for that reason as well, that "*[t]he scope and flexibility of the writ – its capacity to reach all manner of illegal detention – its ability to cut through barriers of form and procedural mazes – have always been emphasized and jealously guarded by courts* and lawmakers.*" Id*. at 290-91 (emphasis added.) *Accord, Hensley v. Municipal Court*, 411 U.S. 345, 349-50 1973) (*Habeas corpus* is "not a static, narrow, formalistic remedy.").

14

As this Court is well aware, prisoners seeking *habeas* relief ordinarily fall into two categories, (1) federal prisoners, under 28 U.S.C. § 2255, and (2) state prisoners, under 28 U.S.C. § 2254. Unlike the Guantánamo detainees, traditional prisoners are afforded a wide variety of rights and protections: they are informed of the crime they are charged with; they are represented by counsel; they are tried by a jury of their peers; they have an appeal; and they have procedural remedies to challenge their incarceration. Yet, after all of these procedural protections, the Great Writ is still available to traditional prisoners in appropriate circumstances.[3]

Even more remarkably, in *habeas* cases arising under 28 U.S.C. §§ 2254 and 2255 the federal courts can excuse procedural defects that would otherwise defeat jurisdiction if cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *United States v. McKie* 73 F.3d 1149, 1154, (D.C. Cir. 1996). Under the cause and prejudice test, a petitioner demonstrates cause by showing "that some

---

[3] An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the *applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant.*

28 U.S.C. § 2254(b)(1)(emphasis added).

A prisoner in custody *under sentence of a court* established by Act of Congress claiming the right to be released upon the ground that *the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack*, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. (emphasis added).

objective factor external to the defense impeded efforts to comply with the State's procedural rule". *High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005) (quoting *Pizzuto v. Arave*, 280 F.3d 949, 975 (9th Cir. 2002)). "Thus, cause is an external impediment *such as government interference* or reasonable unavailability of a claim's factual basis." *Id*. (emphasis added); *see also Lattimore v. DuBois*, 152 F.Supp. 2d 67, 81 (D. Mass. 2001) (trial court's failure to appoint counsel, conduct hearing and require pleadings constituted objective factor impeding procedural compliance), *rev'd on other grounds*, 311 F.3d. 46 (1st Cir. 2002); *Bliss v. Lockhart*, 891 F.2d 1335, 1342 (8th Cir. 1989) (finding cause, prejudice and potential miscarriage of justice excused procedural default).

If this Court can excuse procedural defects that would otherwise deprive it of jurisdiction in traditional *habeas* cases where the prisoners have been afforded many procedural protections, then surely this Court has a similar power here where prisoners have been afforded no such protections. There is no doubt that cause exists here to excuse any technical defects or information gaps in Petitioner Qasim's Petition. If such gaps exist, they are a direct result of the external circumstances created by the Respondents, who control all of the circumstances of Petitioner Qasim's incarceration and all of the information available concerning Petitioner Qasim.

In sum, the Government's challenge to Mr. Al-Murbati's Next Friend standing should be recognized for what it is: a blatant attempt to sink this case by causing it to flounder in a procedural morass. The Motion to Dismiss should be denied as antithetical to the jurisprudential foundations of the Great Writ that have sustained it

for 800 years as the "fundamental instrument for safeguarding individual freedom" against lawless state action.

### VI. ALTERNATIVELY, COUNSEL MUST BE ALLOWED TO CONSULT WITH PETITIONER QASIM AS ORDERED BY THIS COURT AND AGREED IN THE AMENDMED PROTECTIVE ORDER APPLICABLE TO GUANTÁNAMO DETAINEE HABEAS PETITIONS PENDING IN THIS COURT

To the extent there are any lingering question about standing that cannot be excused as procedural defects caused by the Respondents, these questions can be removed if the Respondents simply comply with this Court's order that counsel be permitted to consult with Petitioner Qasim and ascertain his intent to pursue his *habeas* petition on his own behalf.  The opportunity for Petitioner Qasim to consult directly with counsel would assure that he understands the rights available to him and would allow counsel to obtain Petitioner Qasim's written instructions.  In this way, the Court can be assured that Petitioner Qasim has made an informed decision, rather than having to infer that Petitioner Qasim does not want counsel and wishes to stay in detention indefinitely, as the Respondents would have.

Respondents themselves confirm the reasonableness of allowing the consultative process to proceed:

> Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petitions, the next friends should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with the detainees for whom habeas relief is sought.  (*citations omitted*)…(permitting counsel two visits with a detainee before an authorization of representation by the detainee must be provided to respondents.)  *At that time, counsel should determine these detainees' wishes concerning pursuing a challenge to their detention through the habeas petitions in these cases, such that the*

> *cases can then either be converted into direct petitions or be dismissed.*

Motion to Show Cause, at 14, fn. 11 (emphasis added).

The Government also approvingly reports in the Show Cause Motion that the American Bar Association ("ABA") has "agreed to recruit volunteer counsel for pro se petitioners and other detainees who request assistance of counsel in filing a petition for writ of habeas corpus." Show Cause Motion, at 8; Schweigart Declaration, ¶ 7. It is hard to imagine that detainees will feel comfortable asking their jailers for a list of counsel "approved" by the Government, particularly when they already are represented through their Next Friend by willing pro bono counsel. It is even harder to imagine that those who do not file pro se petitions prefer lifelong incarceration to representation by counsel.

Petitioner Qasim actually managed, against the odds set by the Government, to inform a Next Friend that they desperately want and need counsel. If further information is needed to establish standing (and there is no reasonable basis for arguing that), then there is a simple solution. All the issues and concerns raised by the Respondents in their motion could be quickly and easily resolved by allowing the undersigned counsel, who currently has "Secret" security clearance, to confer with Petitioners during an upcoming visit to Guantánamo that has been scheduled in for mid-December and determine whether or not Petitioner Qasim desires to pursue a writ of *habeas corpus*, as required by this Court in its Order to Show Cause.[4]

---

[4] Although Respondents have notified Petitioner's counsel that they cannot identify Petitioner Qasim at Guantánamo, the undersigned counsel could easily secure additional

## VII. RESPONDENTS MOTION TO STAY SHOULD BE DENIED

The Respondents have requested the Court to stay proceedings in this case pending resolution of related appeals. Petitioner is aware that the Court (Robertson, J.) has granted stays in other cases pending before the Court. Petitioner opposes Respondents' request for stay to the extent that it would relieve Respondents of their obligation to file a factual return to the petition, and to the extent that it would prohibit counsel from traveling to Guantánamo and otherwise conferring with Petitioner in accordance with the Amended Protective Order issued in this action.

---

identifying information by interviewing Mr. Al-Murbati, including the precise times when Petitioner Qasim and Mr. Al-Murbati were in contact. This information, compared with DOD records in Guantánamo, can lead to the proper identification of Petitioner Qasim. No doubt exists that Petitioner Qasim is a prisoner who clearly seeks counsel, even if some confusion may exist over what name or translation DOD has in its files.

**CONCLUSION**

For the reasons stated above, Petitioner Qasim has established standing for this Court to review and decide Petitioner Qasim's petition for a writ of *habeas corpus*. If any lingering concerns about standing exist, then this Court should order that Respondents, in compliance with this Court's existing Show Cause Order, cooperate in affording counsel an opportunity to consult directly with Petitioner Qasim and his next friend, Mr. Al-Murbati.


DATED: November 18, 2005      Respectfully submitted,

    \_\_\_\_\_/s/_____
Gitanjali S. Gutierrez (NY1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
New York, NY 10012
(212) 614-6485
ggutierrez@ccr-ny.org

*Counsel for Petitioners*