# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ADIL BIN MUHAMMAD AL WIRGHI,           :
     Detainee,                                         :
     Guantánamo Bay Naval Station            :
     Guantánamo Bay, Cuba,                      :

MOAZZAM BEGG,                                 :
     as Next Friend of                              :
     Adil bin Muhammad al Wirghi,            :
                              :

         Petitioners,                           :

         v.                                           :

GEORGE W. BUSH, DONALD RUMSFELD,    :    No.  05-CV-1497 (RCL)
ARMY BRIG. GEN. JAY HOOD, and ARMY   :
COL. MIKE BUMGARNER,                      :

         Respondents.                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DECLARATION BY ATTORNEY BARBARA OLSHANSKY

I, Barbara Olshansky, declare that the following statements are true to the best of my

knowledge, information, and belief:

     1.     I am a member in good standing of the bar of this Court and have

practiced law for 18 years.  I am also an attorney in good standing in the State of New

York.

     2.     For the last three years, I have been actively involved in the steps that my

office, the Center for Constitutional Rights (CCR), has taken to (1) advance the rights of

the Guantánamo detainees through litigation establishing their right to file petitions for

writs of *habeas corpus* in federal court; (2) work with other non-profit organizations to

reach out to the family members of the Guantánamo detainees for the purpose of filing next-friend petitions for writs of *habeas corpus*; and (3) recruit and train private attorneys to represent individual Guantánamo detainees on a *pro bono* basis.

     3.     CCR has engaged in extensive litigation, advocacy and public education on behalf of the individuals detained at Guantánamo Bay, including the following:

> A.     *Request to Inter-American Commission on Human Rights for Precautionary Measures on Behalf of the Guantánamo Detainees*. In February of 2002, CCR requested that the Inter-American Commission on Human Rights (IACHR) of the Organization of American States issue precautionary measures to protect the detainees at Guantánamo Bay.  On March 12, 2002, the IACHR requested that the U.S. Government take the urgent measures necessary to have the legal status of the detainees determined by a competent tribunal.  The U.S. Government has failed to comply and continues to fail to comply with the IACHR's request.  *See* Decision on Request for Precautionary Measures (Detainees at Guantánamo Bay, Cuba), Inter-Am. C.H.R. (Mar. 12, 2002), *reprinted in* 41 I.L.M. 532, 533 (2002).

> B.     *Habib v. Bush & Rasul v. Bush*.  In February and May of 2002 CCR filed *habeas corpus* petitions challenging the U.S. government's practice of holding foreign nationals in indefinite detention at Guantánamo without access to the courts or the right to know the charges against them. CCR filed the petitions on behalf of two Australian citizens, David Hicks and Mamdouh Habib, and two men from the United Kingdom, Shafiq Rasul and Asif Iqbal. The petitions challenged respondents' indefinite detention of petitioners without due process of law, in violation of the U.S. Constitution and other federal laws, the Geneva Conventions, and international humanitarian and human rights law.  CCR and its co-counsel litigated the case before the District Court, the D.C. Circuit Court of Appeals, and the United States Supreme Court.  On June 28, 2004, the Supreme Court held that the detainees have the right of access to U.S. courts to challenge their detention under 28 U.S.C. § 2241.  *Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

4.      Responding to the Supreme Court's historic decision upholding the rule of law at Guantánamo, CCR has spearheaded the effort to get each detainee his day in court. Since the Supreme Court decision, CCR and its partners have arranged for private law firms to represent detainees and file *habeas corpus* petitions on a pro bono basis in this Court.   Through these efforts, more than 200 detainees currently have *habeas corpus* petitions pending in this Court.

5.      Because the U.S. government has refused to provide CCR or any other organization or attorney access to the Guantánamo detainees in any manner that would facilitate providing them advice regarding their right to file a habeas petition and the availability of pro bono counsel to represent them, each of the petitions currently on file with this Court was made possible through one of two means:  (i) requests by the family members or loved ones of those detained for legal assistance from CCR or from other human rights organizations or counsel with whom CCR is working; or (ii) requests made through certain detainees (who are represented by counsel) acting as next friends for other detainees who have expressed their desire to retain counsel and file habeas petitions.

6.      More specifically, CCR and its partner organizations received authorizations from next friends through outreach activities which included, among other things, taking part in human rights conferences around the world, contacting international human rights organizations, and searching for family members of known detainees.  In addition, advocates working with CCR made numerous outreach efforts to member countries of the European Parliament seeking their assistance in locating their citizens.

Despite these efforts, CCR and its partners have not been able to identify next friends for the vast majority of Guantánamo detainees.

7.      CCR and its partners have used the information they have obtained to date to match detainees with private law firms willing to represent detainees on a *pro bono* basis and file *habeas corpus* petitions on the detainees' behalf.

8.      However, despite the work of CCR and its *pro bono* partners, the vast majority of detainees at Guantánamo – upon information and belief, approximately 300 – remain unrepresented for the simple reason that the United States Government has held them virtually incommunicado and in physical isolation.

9.      The Government's refusal to disclose the names of the Petitioners, to provide the Petitioners with meaningful notice of their rights, and to permit CCR or any similar organization to communicate with them regarding these rights has prevented the Petitioners from being able to access and obtain counsel to do what the Supreme Court said they have a right to do—file *habeas* petitions challenging the legality of their detention.

10.     In addition to its own efforts as described above, CCR has also tried to work with the United States Government to ensure that every detainee at Guantánamo is able to take advantage of his right to file a *habeas corpus* petition, as affirmed by the U.S. Supreme Court in *Rasul v. Bush*.

11.     Despite a number of good faith efforts to negotiate with Respondents, CCR has been denied any opportunity to communicate with the detainees at Guantánamo to advise them of their rights, and assist them in retaining counsel.

4

12.    In a July 1, 2004 letter to Respondent Rumsfeld, CCR Legal Director Jeffrey Fogel requested immediate access to the unrepresented detainees. Mr. Fogel offered to organize a delegation of lawyers to travel to Guantánamo to inform them of their rights under *Rasul*, and to assist them in obtaining legal representation. A true and correct copy of that letter is attached to this Declaration as Exhibit A. Mr. Fogel did not receive any reply to his request.

13.    Mr. Fogel subsequently contacted Gordon England, Secretary of the Navy, by letter dated July 14, 2004. In this letter, Mr. Fogel stated that the detainees had still not been adequately informed of their rights under *Rasul*, and again offered to lead a delegation of lawyers to Guantánamo to provide detainees with information about their rights under *Rasul* and to aid them in seeking legal representation. A true and correct copy of the July 14, 2004 letter is attached to this Declaration as Exhibit B.

14.    Alberto J. Mora, General Counsel of the Navy, responded to CCR's July 14 letter by letter dated July 20, 2004. Mr. Mora stated that the "Department of Defense and the Department of the Navy are in the process of exploring, in concert with the Department of Justice, the manner in which additional information will be provided to the detainees regarding habeas corpus applications." Mr. Mora did not provide any concrete information regarding how these Departments would provide the detainees with information about their rights, nor did he indicate any willingness to negotiate access to the unrepresented detainees by CCR or any other counsel. A true and correct copy of July 20, 2004 letter is attached to this Declaration as Exhibit C.

15.    In another attempt to assist the Guantánamo detainees, CCR attorney Shayana Kadidal, sought to apply for security clearance in order to meet with unrepresented detainees.  The Solicitor General's Office informed Mr. Kadidal that it only handled security clearances for existing petitions and he would have to seek access to the unrepresented detainees through the Department of Defense General Counsel's Office, which stated it would handle the clearance "like any other request for a visit to Guantánamo."

16.    On September 16, 2004, Mr. Kadidal applied for clearance through the Department of Defense.  A true and correct copy of Mr. Kadidal's application is attached to this Declaration as Exhibit D.  Mr. Kadidal's application was denied by letter dated November 2, 2004.  Mr. Kadidal did not receive the November 2, 2004 letter until December 8, 2004.   The November 2, 2004 letter stated that:

> Under procedures set up by the Department of Defense, the only counsel currently provided access to the detainees are counsel who are employed or retained by or on behalf of a detainee for purposes of representing the detainee in habeas corpus or other litigation in federal court in the United States …

A true and correct copy of the November 2, 2004 letter is attached to this Declaration as Exhibit E.

17.    On December 17, 2004, CCR sent yet another letter to Secretary England requesting the names and identifying information of all unrepresented detainees at Guantánamo, so that CCR could contact the remaining detainees or their family members, to advise them of their rights under *Rasul* and of the availability of volunteer lawyers to assist them in bringing *habeas* actions.   A true and correct copy of that letter is attached to this Declaration as Exhibit F.

18.    This request was also denied.  In a letter dated January 14, 2005, Principal Deputy Associate Attorney General Brian Boyle stated that the Department of Defense: "believe[s] that each of [CCR's] concerns is being effectively addressed by the habeas filing opportunities currently afforded detainees, or is of marginal bearing on the issue of detainee access to the habeas process."  A true and correct copy of that letter is attached to this Declaration as Exhibit G.

19.    The Government has also failed to adequately inform the unrepresented detainees of their rights.  Between July 12 and 14, 2004, each detainee apparently was given a notice (the "July Notification") stating:

> . . . United States courts have jurisdiction to consider petitions brought by enemy combatants held at this facility that challenge the legality of their detention.  **You will be notified in the near future what procedures are available should you seek to challenge your detention in U.S. courts.** (emphasis added)

20.    Notwithstanding this promise by the Government, for more than five months, the Government did nothing to adequately explain the "procedures ... available should [the detainees] seek to challenge [their] detention in U.S. courts."

21.    In mid-December 2004, the Department of Defense posted on its website a second notification (the "December Notification") which addresses the possibility of the detainees' seeking *habeas* relief.  But the December Notification, like the July Notification, did not provide detainees with practical information that would in any way enable them to secure counsel to file a petition in court.  In fact, the December Notification merely informs detainees that they can file their *own habeas* corpus petitions.

22.    We believe that the Government's July and December Notifications are inadequate to enable the unrepresented detainees to make and implement meaningful decisions as to the filing of *habeas corpus* petitions.  It is especially significant in this regard that CCR and other *habeas* counsel have received information that corroborates the repeated reports by the press and official investigative bodies:  many of the detainees may be in poor physical and mental condition.  *See, e.g.*, United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005.  The unrepresented detainees, moreover, are now beginning the fourth year of a detention that makes it nearly impossible for them to contact the outside world.

23.    The additional information dissemination plans outlined in Mr. Boyle's January 14, 2005 letter did not cure these deficiencies.  Mr. Boyle states that the Department of Defense plans to provide a "supplemental information sheet with the names and addresses of U.S. lawyers" to "detainees who inquire about the availability of a lawyer for purposes of filing a habeas petition."  *See* Exhibit G.  But the detainees cannot be expected to trust the military officers who serve as their custodians and interrogators to provide them with attorneys who will act as zealous advocates on their behalf.  As a consequence, it seems highly unlikely that the detainees will ask their captors for help, or trust their statements.  Moreover, the "supplemental information," should it materialize, does not aid those detainees who are physically or mentally unable to express an interest in advocating on their own behalf.

I declare, under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 9th day of September, 2005, New York, New York.

_Barbara J. Olshansky_

Barbara Olshansky (NY0057)

# EXHIBIT A

# centerforconstitutionalrights

666 broadway new york, ny 10012
t 212 614 6464 f 212 614 6499 www.ccr-ny.org

July 1, 2004

Hon. Donald H. Rumsfeld
Secretary of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

Dear Secretary Rumsfeld:

As you know, the Center for Constitutional Rights represents
two of the petitioners in the decision of the United States
Supreme Court entitled Rasul v. Bush.  In addition, we represent
51 other detainees being held by the United States at Guantánamo
Bay.

I write to insist that we be permitted unfettered access to
our clients as expeditiously as possible.  There is no question
of the right of each of them to file petitions for habeas corpus
and to have access to counsel in order to do so.

In addition, it is incumbent on the United States government
to provide a means of informing each of the persons held by it at
Guantánamo of the fact of the decision and of their rights
pursuant to the ruling of the Court.  They must also have means
to contact their families or others for the purpose of securing
counsel.  We are prepared to organize a delegation of attorneys
for that purpose.

I look forward to your prompt response.

Very truly yours,

Jeffrey E. Fogel
Legal Director



# EXHIBIT B

# centerforconstitutionalrights

666 broadway new york, ny 10012
t 212 614 6464 f 212 614 6499 www.ccr-ny.org

July 14, 2004

Hon. Gordon R. England          BY FAX: 703-693-7330
Secretary of the Navy           and regular mail
1000 Navy Pentagon
Washington, D.C. 20350-1000

                              Re:  Guantanamo detainees

Dear Secretary England:

     The Center for Constitutional Rights has reviewed the
proposed notice which will be provided to each of the detainees
held by the United States at Guantanamo Bay.

     As the notice itself says, there is a need for additional
information on the issue of habeas corpus applications.
No explanation is given to these foreign nationals of what a
habeas corpus petition is, or what their rights are in light of
the Supreme Court decision in Rasul v. Bush.  Moreover, no
information is provided about how the detainees may secure
counsel (who are available) in order to file and prosecute such
an action.  There is an obvious conflict of interest where the
armed forces provides legal advice to the persons who are its
adversaries, and there are ethical problems with having non-
lawyers (the "Personal Representatives") provide legal advice.

     As a public interest law firm, CCR has offered to organize a
delegation of lawyers who would be willing to provide the kind of
information necessary for each of the detainees to understand
their rights, to make a meaningful choice of their legal options
and to assist in securing legal representation.  Meanwhile, I
enclose herewith a form of notice which would, at least, begin
the process necessary to comply with the Constitution of the
United States, international law as well as the decision of the
Supreme Court.

                         Very truly yours,

                         Jeffrey E. Fogel
                         Legal Director



# EXHIBIT C



**DEPARTMENT OF THE NAVY**
GENERAL COUNSEL OF THE NAVY
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

JUL 20 2004

Mr. Jeffrey E. Fogel
Legal Director
Center for Constitutional Rights
666 Broadway
New York, NY  10012

Dear Mr. Fogel:

     Thank you for your letter of July 14, 2004, regarding the notice to be provided to detainees held at Guantanamo Bay, Cuba.  The Secretary of the Navy has asked me to review your letter and respond to you directly.

     The Department of Defense and the Department of the Navy are in the process of exploring, in concert with the Department of Justice, the manner in which additional information will be provided to the detainees regarding habeas corpus applications.  We will add your input to those we have already received.  We are working hard to satisfy the mandate of the recent Supreme Court decisions within the constraints of the unique security situation that exists at Guantanamo.

     Thank you for your interest in this matter.

                              Sincerely yours,


                              Alberto J. Mora

# EXHIBIT D

# centerforconstitutionalrights

666 broadway new york, ny 10012
t 212 614 6464 f 212 614 6499 www.ccr-ny.org

September 16, 2004

John J. Sullivan, Esq.
Deputy General Counsel
Department of Defense
Room 3C975
1600 Defense Pentagon
Washington DC 20301

Dear Mr. Sullivan:

I am writing to seek authorization to visit unrepresented detainees being held at Camp Delta in the Guantánamo Bay Naval Station and advise them on their right to file habeas corpus petitions in federal court challenging the legality of their detention, and assist them in obtaining other counsel in order to do so.

As I stated in our phone conversation earlier today, I am seeking to meet with unrepresented detainees, that is, those who have not retained counsel themselves and who do not have next friends who have already filed habeas petitions on their behalves. There are some individual detainees who I believe fall within this class whose names I can provide to you if it will expedite this process.

I spoke earlier today with David Salmons, Esq. of the Solicitor General's Office, who has authorized the Department of Justice Court Security Office to process the security clearance applications of various habeas counsel for Guantánamo detainees. Mr. Salmons informed me that because no cases had yet been filed in federal court on behalf of the detainees I seek to visit, the Department of Justice could not process my security clearance application. He recommended that I speak to you.

When we spoke earlier today you did not indicate whether you expected me to include a copy of a security clearance application with this letter. I have taken the liberty of including a completed SF86 form, with certain additional waivers requested by the Department of Justice as part of its Guantánamo clearance process. The Department of Justice Court Security Office provides fingerprint cards to attorneys seeking clearance to visit clients in Guantánamo; if your office could arrange for delivery of appropriate fingerprint cards I will have a set of my prints made at our local police precinct immediately.

Please feel free to contact me with any questions you may have about this matter at (212) 614-6438. Thank you for your assistance, which I am sure will be appreciated by the detainees.

Yours sincerely,

Shayana Kadidal, Esq.



# EXHIBIT E

DEC-08-2004  15:22        ODGCLC                                              P.02

**DEPARTMENT OF DEFENSE**
**OFFICE OF GENERAL COUNSEL**
1600 DEFENSE PENTAGON
WASHINGTON, DC 20301-1600



NOV 0 2 2004

Shayana Kadidal
Center for Constitutional Rights
66 Broadway
New York, New York 10012

Dear Mr. Kadidal:

I am writing in response to your letter of September 16, 2004, requesting access to detainees at Guantanamo Bay.

Under procedures set up by the Department of Defense, the only counsel currently provided access to the detainees are counsel who are employed or retained by or on behalf of a detainee for purposes of representing the detainee in habeas corpus or other litigation in federal court in the United States and who are admitted, either generally or pro hac vice, in the jurisdiction where the habeas petition or other litigation is pending. As you do not meet those criteria, your request for access to the detainees cannot be granted.

If you have any questions about this policy, please contact Andrew Warden at the Department of Justice at (202) 616-5084

John J. Sullivan
Deputy General Counsel
(Legal Counsel)

TOTAL P.02

# EXHIBIT F

# centerforconstitutionalrights

666 broadway new york, ny 10012
212.614.6464 www.ccr-ny.org

December 17, 2004

Hon. Gordon R. England
Secretary of the Navy
1000 Navy Pentagon
Washington, DC  20350-1000

**VIA FACSIMILE:  (703) 693-7330**

Dear Secretary England,

As you know, the United States presently acknowledges detaining approximately 550 individuals at the Guantánamo Bay Naval Base, Cuba.  Approximately 63 of those individuals have filed habeas corpus petitions with the D.C. district court.  We intend to take any legal action necessary, including filing habeas petitions on behalf of the remaining detainees, in order to ensure that every detainee at Guantánamo has the opportunity to avail themselves of the decision in *Rasul.*

Accordingly, we are writing to request that you provide us with the names and other identifying information about each person held at Guantánamo whose identity has not yet been made known and who has not yet filed a petition for a writ of habeas corpus ("unidentified detainee" or "detainee").  This request encompasses every detainee being held at Guantánamo by any agency of the U.S. Government or any employee or agent, public or private, thereof, regardless of whether the individual is listed on the International Committee of the Red Cross internee rolls.  This information must be provided so that each detainee can be contacted and offered legal assistance.

We specifically request the following information for all such detainees:

(a) names, including all alternate spellings, aliases, or other appellations used by the U.S.



Government; (b) ethnicity and national origin; (c) country or countries of citizenship; (d) country of residence prior to interdiction; (e) next of kin and their contact information; (f) the names and countries for the detainees' consular contacts. The information that will enable us to reach a detainee's next of kin is required so that we will be able to contact those individuals in the event that any detainee is unable to make a decision by himself regarding whether or not to file a petition for a writ of habeas corpus.

The right to counsel has been recognized by the Supreme Court and is crucial to carrying out the Supreme Court's mandate that each detainee be permitted to challenge his detention. *See Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2652 (plurality opinion of O'Connor, J.) ("He [Hamdi] unquestionably has the right to access to counsel in connection with the proceedings on remand."); *id.* at 2660 (concurring opinion of Souter, J.); *Rasul v. Bush*, 524 U.S. __, 124 S. Ct. 2826, 2698 n.15 (2004) (plaintiffs' allegations of detention "without access to counsel and without being charged with any wrongdoing—unquestionably describe 'custody in violation of the Constitution or laws or treaties of the United States.'"); *see also Al Odah v. United States*, No. 02-828 (D.D.C. Oct. 20, 2004), slip op. at 8 (the "Supreme Court has found that Petitioners have the right to bring their claims before this Court, and this Court finds that Petitioners cannot be expected to exercise this right without the assistance of counsel.").

After the Supreme Court released its opinions in *Rasul* and *Hamdi*, Government officials publicly acknowledged the necessity of taking action to enable detainees to consult with counsel. For example, during a Department of Defense briefing on July 7, 2004, a senior Justice Department Official was asked whether currently unrepresented Guantanamo detainees would have access to counsel. The official replied that lawyers

would have access to the detainees but that the "precise details of that would have to be worked out in the future." Defense Department Background Briefing on the Combatant Status Review Tribunals, July 7, 2004, available at http://www.defenselink.mil/ transcripts/2004/tr20040707-0981.html. Similarly, in a news briefing two days later, you promised that the Government would "facilitate" access to the unidentified detainees as "quickly as we can." Defense Department News Briefing on the Combatant Status Review Tribunals, July 9, 2004, available at http://www.defenselink.mil/transcripts/2004/ tr20040709-0986.html.

Unfortunately, these promises have not been honored. We recognize that the Department of Defense has recently made available the text of a Notification, a copy of which we have attached to this letter as Exhibit A, that it intends to distribute to all detainees after they have completed the Combatant Status Review Tribunal ("CSRT") process and received certifications. Although the Notification mentions the right to file a habeas petition, it is insufficient for a number of reasons. First, the Notification does not explain the mechanics of filing a habeas lawsuit. There is no explanation of what a "petition" is or should allege. Second, detainees, who are not familiar with U.S. law, certainly will not understand what a habeas lawsuit is (notwithstanding the description that appears in the Notification). Third, the detainees have no reason to trust the person delivering the Notification -- a representative of the U.S. Government -- and as a result might doubt that the Notification means what it says. This is particularly true given that these same individuals will have just been denied relief through the CSRT process. Fourth, the Notification's instruction that the detainees speak with their "assigned Assisting Military Officer" if they have any questions is particularly problematic and

objectionable, because the officer would lack a privileged relationship with the detainee and would be free to communicate any information that he or she learns from the detainee to his or her superiors. Fifth, the Notification does not provide any instruction on how the detainee could retain a lawyer, should he desire legal advice or assistance with this matter before the petition is filed. Sixth, the Notification makes no provision for assistance for those detainees who are illiterate or otherwise lack the capacity to advocate on their own behalf. Seventh, the Notification provides no assurance that these "petitions" or letters to family members will be mailed in a timely manner. Our understanding is that getting mail in and out of Guantánamo is a very difficult and time-consuming process. Moreover, even if the mail reaches the district court, there does not appear to be any process in existence to expedite the assignment of counsel for detainees seeking counsel to represent them. Finally, it appears that this Notification is being distributed to detainees only *after* their certification as "enemy combatants" through the CSRT process.

Nearly six months have elapsed since the Supreme Court issued its decisions in *Rasul* and *Hamdi*, yet the unidentified detainees at Guantánamo have been unable to pursue the right that the Supreme Court recognized in these cases -- the right to file a habeas petition with the assistance of counsel. There has been ample time for you to take action to effectuate the Supreme Court's holding in *Rasul*, as you and other U.S. officials promised in the first week of July 2004. Accordingly, if we do not receive by January 5, 2005 the detainees' names and the other identifying information that we have requested, we will take appropriate legal action on behalf of the detainees through the judicial process.

Sincerely,

Barbara Olshansky,
Deputy Legal Director
Center for Constitutional Rights

cc:
Terry Henry, United States Department of Justice
FAX: (202) 616-8470

# EXHIBIT G



U.S. Department of Justice

Office of the Associate Attorney General

Washington, D.C. 20530

January 14, 2005

<u>VIA FACSIMILE AND ELECTRONIC MAIL</u>

Ms. Barbara Olshansky
Deputy Legal Director
Center for Constitutional Right
666 Broadway
New York, NY 10012

Dear Ms. Olshansky:

The Secretary of the Navy, Gordon England, has asked me to reply to your letter of December 17, 2004, to him raising concerns regarding the ability of enemy combatants detained at Guantanamo Naval Base to access habeas corpus opportunities in U.S. federal courts.

It has been longstanding Department of Defense ("DOD") policy, reinforced by requests from a number of home countries, not to release detainee names into the public domain. We believe each of your concerns is effectively being addressed by the habeas filing opportunities currently afforded detainees, or is of relatively marginal bearing on the issue of detainee access to the habeas process. Therefore, DOD declines to provide the Center for Constitutional Rights with the detainees' names or other identifying information as requested in your letter.

Nevertheless, it may be of interest to you that DOD is currently preparing a supplemental information sheet that would be provided to those detainees who inquire about the availability of a lawyer for purposes of filing a habeas petition. DOD's intentions are to include in the information sheet the names and addresses of U.S. lawyers who may be available to provide representation to interested detainees, or who may be able to refer the request for representation to other attorneys. (The disclosure of names and addresses will obviously be subject to the prior approval of the lawyers in question.) The information sheet will include instructions for detainees interested in legal representation concerning, for example, what information to include in a letter to counsel. DOD has requested that we discuss the formulation of this information sheet with the lawyers who are currently involved in representing Guantanamo detainees in habeas matters, among others.

- 2 -

If you and other lawyers involved in Guantanamo litigation are interested in pursuing such a discussion, please contact me at your earliest convenience.

Sincerely,

BRIAN D. BOYLE
Principal Deputy Associate Attorney General


cc:    (Via Electronic Mail)
       Lead Counsel of Record/Guantanamo Litigation