# EXHIBIT C



J. Triplett Mackintosh
(306) 295-8186 (phone)
(303) 295-8261 (facsimile)
tmackintosh@hollandhart.com

February 7, 2006

**VIA OVERNIGHT DELIVERY**

The Honorable Judge Alan Kay
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001

Re:    **Status Report and Request for Status Conference, Entry of Protective Orders and Access to Petitioners:** *Boucetta v. Bush, et al.,* **05-CV-2087,** *Nabil v. Bush, et al.,* **05-CV-1504,** *Al Hawary v. Bush, et al.,* **05-CV-1505,** *Motai Saib,* **05-CV-1353,** *Shafiiq v. Bush, et al.,* **05-CV-1506**

Dear Judge Kay:

As counsel for the above-captioned Petitioners, Holland & Hart LLP submits this letter to update the Court on the status of each Petitioner's case, to request a status conference on these cases, and to request the Court's assistance in securing additional relief. Specifically, we request the Green Protective Orders be entered in Nabil's and Al Hawary's cases and that we be allowed to visit Nabil, Al Hawary and Saib, in addition to Boucetta, on our next visit to the U.S. Navel Base in Guantánamo Bay, Cuba ("Guantánamo"). Pursuant to Judge Collyer's January 27, 2006 Order ("Order"), each of these cases has been stayed and pending motions have been denied without prejudice.

**Fethi Boucetta, a/k/a Dr. Abu Muhammed, 05-2087:**

Fethi Boucetta is a non-enemy combatant detainee who continues to be illegally held at Guantánamo. Mr. Boucetta is an Algerian citizen, who lived in Pakistan and was practicing medicine there at the time of his arrest. He has a wife and six children who currently reside with his brother-in-law in Algeria. Trip Mackintosh has been in regular contact with Mr. Boucetta's brother-in-law, and has spoken with his sister who lives in Paris. We have requested the Government arrange for telephone calls between Mr. Boucetta and his family, since he has had no contact with his family since his arrest.

In January, the Government arranged for us to have a telephone conference with Mr. Boucetta, who speaks Arabic, French and some English. Trip Mackintosh and Hamid Khan will be at Guantánamo February 10-12, 2006, and will meet with Mr. Boucetta at that time.

**Holland & Hart** LLP
Phone (303) 295-8000   Fax (303) 295-8261   www.hollandhart.com
555 17th Street  Suite 3200  Denver, CO  80202   Mailing Address  P.O. Box 8749  Denver, CO  80201-8749
Aspen   Billings   Boise   Boulder   Cheyenne   Colorado Springs   Denver   Denver Tech Center   Jackson Hole   Salt Lake City   Santa Fe   Washington, D.C.

 **HOLLAND & HART** LLP
THE LAW OUT WEST

The Honorable Judge
Alan Kay
February 7, 2006
Page 2

In order to secure his release, we are working with Mr. Boucetta's family to gather documents proving Mr. Boucetta's Algerian citizenship, as the Algerian government has requested proof of citizenship of any detainee claiming to be Algerian. Mr. Boucetta's family has also requested that the Government provide us with evidence of the "No Longer Enemy Combatant" status from Mr. Boucetta's Combatant Status Review Tribunal. On February 7, Danielle Voorhees relayed this request to Andrew Warden, who stated that the Government continues to oppose production of CSRT documents, including factual returns, and the Government would not be willing to provide a letter stating that Mr. Boucetta has been declared a non-enemy combatant. Absent this evidence, the Algerian government is denied clear proof of Mr. Boucetta's non-enemy combatant status. The Government's denial is impeding our efforts, and his family's efforts, to repatriate this individual.

We agree with counsel for the other non-enemy combatants ("NEC Counsel") that the Green Protective Orders, currently in place in Mr. Boucetta's case, are too restrictive given that these are innocent men being detained. Mr. Boucetta ought to have access to regular exercise, books, movies and telephone conferences with his family. As suggested by other NEC Counsel, we believe a visit by you to Camp Iguana would be enlightening and may help the Court in addressing some of the unique issues these innocent detainees face.

### Nabil (last name unknown) 05-1504:

Because the Government's next friend standing challenge in this case has been dismissed pursuant to the Order, there is no reason why counsel should not be allowed to visit Nabil on our next visit to Guantánamo, which we intend to schedule at once.

Additionally, on December 13, 2005, Gitanjali S. Gutierrez, co-counsel on this case, visited with Nabil's Next Friend, Mr. Jamal Kiyemba, another detainee. As explained in Ms. Gutierrez' attached Declaration, Mr. Kiyemba explained that Nabil explicitly requested that Mr. Kiyemba help him find an attorney. Gutierrez Declaration at ¶ 20.

The Government's next friend standing challenge in this case is therefore also moot, and we ought to be allowed to visit Nabil on our next visit to Guantánamo. We understand that entry of the Green Protective Orders is a prerequisite to obtaining access to Nabil and, therefore, request that the Court enter the Protective Orders in Nabil's case. Holland & Hart currently has six attorneys with security clearances; therefore, once the protective orders are entered, we would be able to have access to Nabil under the terms negotiated by the Government, counsel for detainees and the Court.



HOLLAND & HART LLP
THE LAW OUT WEST

The Honorable Judge
Alan Kay
February 7, 2006
Page 3

## Abbar Sufian Al Hawary 05-1505:

Like Petitioner Nabil, the Order has dismissed Respondents' Motion to Show Cause in Mr. Al Hawary's case. We therefore request that the Green Protective Orders be entered in this case and that we be allowed to visit Mr. Al Hawary on our next visit to Guantánamo. To ensure that proper travel and translation arrangements are made well in advance, we request that the Government provide us with Mr. Al Hawary's language and literacy skills.

## Motai Saib, 05-1353:

In early January, we were making arrangements for Messrs. Mackintosh and Khan to visit both Fethi Boucetta and Motai Saib during their visit to Guantánamo this week. Respondents, however, filed a belated Motion to Show Cause in this case on January 5, 2006, and then informed us that we would not be allowed to visit Mr. Saib due to the pending Motion.

The Green Protective Orders have been entered in Mr. Saib's case and it would obviously be most effective and efficient for us to visit Mr. Saib directly during our visit to Guantánamo. The Government has, however, denied this request. Therefore, we have made arrangements to visit his Next Friend, Bisher Al Rawi, instead.

Now, pursuant to the Order, the Government's next friend standing challenge has been dismissed. Therefore, there is no reason why we should not be allowed to visit Mr. Saib during our next Guantánamo visit. We request visitation with Mr. Saib directly on our next visit to Guantánamo, and we further request the Government provide us with information about Mr. Saib's language abilities and literacy so that we may make translator arrangements, if necessary.

## Shafiiq (last name unknown), 05-1506:

Mr. Shafiiq has been charged with conspiracy and is currently being represented by Capt. Wade N. Faulkner, OSJA as criminal counsel in his military tribunal. We continue to represent Shafiiq for purposes of his habeas petition. We will advise the Court if, after consultation with Shafiiq's military counsel, action by us appears appropriate.

We respectfully request a status conference in early March, or at such other time as would be convenient for this Court and Respondents, so that we may discuss the issues raised in this letter, including the release of Mr. Boucetta, entry of the Green Protective Orders in Nabil's and Al Hawary's cases, and access to Nabil, Al Hawary, Saib and Shafiiq, in addition to Boucetta, during our next visit to Guantánamo. We greatly





The Honorable Judge
Alan Kay
February 7, 2006
Page 4

appreciate the Court's time in assisting Petitioners and Respondents in working through these issues.

Sincerely,

J. Triplett Mackintosh
Holland & Hart LLP

DRV
Enclosure (Gutierrez Declaration)

cc:    Andrew Warden, Esq.
       Terry Henry, Esq.
       Gitanjali S. Gutierrez, Esq.

3512091_2.DOC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NABIL (Last Name Unknown), *et al.*, )<br><br>Petitioners, )<br><br>     v. )<br><br>GEORGE W. BUSH,<br>   President of the United States,<br>   *et al.*, )<br><br>Respondents. ) | Civil Action No. 05-CV-1504 (RMC) |

## <u>DECLARATION OF GITANJALI S. GUTIERREZ</u>

I, Gitanjali S. Gutierrez, declare that the following statements are true to the best of my knowledge, information, and belief:

1. I am an attorney with the Center for Constitutional Rights, co-counsel for Petitioner Nabil in the above-captioned action.  I offer this Declaration in support of Petitioner Nabil's Petition for Writ of Habeas Corpus.

2. I met with Petitioner Nabil's  Next Friend, Mr. Jamal Kiyemba, a detainee at Guantánamo Bay Naval Station, Guantánamo Bay, Cuba ("Guantánamo") on December 13, 2005, to discuss his role as Petitioner's next friend.

3. The Department of Defense (DOD) sent my attorney notes from Guantánamo to the secure work facility for habeas counsel in Washington, D.C. I submitted the notes for review by the Privilege Team on January 12, 2006 and received my unclassified notes from the Court Security Office on January 20, 2006.

4. Mr. Kiyemba is a British resident who speaks English. He has been detained in Guantánamo for almost four years.  He also understands our legal system and the meaning of a "next friend."

5. I asked Mr. Kiyemba about the ability of the detainees to access the federal courts or counsel to challenge the legality of their detention and about the relationship between the prisoners.

### Inability to Access the Courts or Legal Counsel

6. According to Mr. Kiyemba, the military mail system is too slow for any detainee to rely upon it as a means of reliably contacting a lawyer.

7. He also explained that there is no guarantee that if a prisoner submits a letter asking for help from the court to the military guards at the camp that the letter will ever reach the court. The prisoners hardly receive any letters from the outside world – perhaps one heavily censored letter every six to nine months – which leads to the conclusion that they cannot trust or rely upon the military mail system to deliver the detainees' letters to the intended recipient.

8. Moreover, the detainees do not have the address for a lawyer in the United States and do not know where they can write to get a lawyer, other than through verbal or written requests give to the lawyers who are currently representing other prisoners. The detainees have no experience with United States lawyers and have no idea how to secure a lawyer other than communicating their request through a prisoner who has counsel.

9. The detainees, including the petitioners in this matter, wait for a friend to have a meeting with a lawyer. Then they ask their friend to request legal assistance for them from the lawyer who comes to visit.

10. Mr. Kiyemba only knows of two detainees who wrote the court to after receiving the Enemy Combatant Notification (ECN). Nothing in the ECN explained to the

detainees that if they wrote the court, the court will assign a lawyer, or that the lawyer was free, or what the lawyer could do for them

11. The detainees did not know, and still do not know, if any lawyer will help them file a habeas petition, if a lawyer is available to answer their questions about this process, etc. Mr. Kiyemba was educated in England, yet he has a very limited grasp of what a "petition for habeas corpus" is. It was his opinion that most of the prisoners in Guantanamo would have no idea what the term meant.

12. As of December 5, 2005, the two detainees who tried to contact the court have not received lawyers to Mr. Kiymeba's knowledge. Neither of these detainees reads or speaks English. They eventually received some document in the mail from the court, but it is in English and the detainees do not know what it is or what it means. The document was never translated into Arabic so they still cannot read it.

13. For the rest of the detainees, this situation was further evidence that the instructions in the ECN for writing the court would not work as a means of obtaining access to the court or, more importantly, access to a lawyer.

14. According to Mr. Kiyemba, the ECN was also distributed with translations in some, but not all, of the languages spoken by the detainees. Mr. Kiyemba remembers, for example, a detainee from the Maldives who requested a copy in his native language. The detainee never received it. Instead, he was given a copy of the ECN in Urdu, a language he was not fluent in. This makes it even less likely that the prisoners will understand their rights.

15. Military personnel told the detainees living with Mr. Kiyemba at the time they received their ECN that if the detainees had any questions about the information in the ECN, they could ask their "personal representative" during the CSRT process.

This assumes that the detainee met with the personal representative and participated in the CSRT process, which many detainees did not. Also, a number of prisoners asked to see their personal representative about questions like this and received no reply.

16. The individuals whom Mr. Kiyemba has acted as a next friend, including petitioners, all sought his assistance in finding them legal counsel because they did not know how else to obtain a lawyer. One thing that most prisoners did understand in the ECN was that they could ask "a friend" to file a petition for them. This is what Mr. Kiyemba was doing for these prisoners, and this is what they wanted him to do.

17. Because he speaks English and has a lawyer, he translated these verbal requests for counsel and forwarded them to his existing attorney.

### Close Relationship Between the Detainees

18. Mr. Kiyemba provided several reasons why a detainee next friend is necessary and appropriate. A significant number of detainees do not want their wife or family meeting with strangers, especially U.S. lawyers. Many prisoners are from countries where they fear that such contact could get their families into danger. The detainees would much rather ask a friend in Guantánamo to help them get an attorney.

19. After being imprisoned together and living with one another for twenty-four hours a day, seven days a week, the detainees are very close and familiar with one another.

20. Petitioners Nabil and Sahfiiq both asked Mr. Kiyemba to convey their request for a lawyer to Mr. Kiyemba's attorney. Mr. Kiyemba understood the Petitioners to be trusting him to act in their best interest and to help them find a lawyer. He thought that acting as their next friend was the most effective way to secure a lawyer for them, but they made a direct request for an attorney.

21. According to Mr. Kiyemba, the military also moves the detainees into different cell blocks on a regular basis. This makes it often impossible for him to get additional

details or to have a detainee sign a new written authorization for direct authorization if the detainee previously gave Mr. Kiyemba a verbal request for the assistance of a lawyer that Mr. Kiyemba translated and wrote down.

22. I declare, under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 6th day of February, 2006 in New York, New York.

_____

Gitanjali S. Gutierrez