UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**MUHAMMED QASIM**,                )
                                   )
      Petitioner,              )
                                   )
v.                                 )    No. 1:05-CV-1779 (JDB)(AK)
                                   )
                                   )
**GEORGE BUSH** *et al.*,          )
                                   )
      Respondents.             )
                                   )
_____)

### MEMORANDUM ORDER

Pending before the Court is Petitioner's Motion to Enforce Order of November 4, 2005 Granting Access to Counsel and For Entry of the Protective Order ("Mot.") [14], Respondents' Opposition ("Opp'n") [15] and Petitioner's Reply [16]. On Jul 20, 2006, the trial Court, Bates, J., granted Petitioner's Motion with respect to entry of the Protective Order[1] and referred all remaining questions of compliance with and interpretation of the Protective Order to this Court.[2]

---

[1] In recognition of the security concerns attendant to the Guantanamo *habeas* cases, the Protective Order sets procedures that counsel must follow in order to meet and communicate with their clients. The Protective Order was initially approved and entered by Judge Joyce Hens Green in *In re Guantanamo Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), following intense negotiation and litigation over its terms. *See Adem v. Bush*, 425 F. Supp. 2d 7, 10-14 (D.D.C. 2006) (reviewing history of negotiation and entry of Protective Order), *aff'd*, No. 05-723, slip op., 2006 WL 1193853 (D.D.C. April 28, 2006). It has since been entered in the vast majority of Guantanamo *habeas* cases pending before the District Court.

[2] On November 2, 2005, in recognition of "the need to promote orderly and efficient case management of all *habeas* petitions . . . relating to the rights of [Guantanamo] detainees," Judge Kessler, acting as Chair of the Calendar and Case Management Committee referred all motions

*See* Minute Order of July 20, 2006. Petitioner claims that Respondents have refused to permit him access to counsel as required by the Protective Order and several previous court orders granting counsel access under virtually identical circumstances. Respondents insist that counsel provide written evidence of their authorization to represent the Petitioner before he will be allowed to meet with a lawyer. Upon consideration of the parties' filings to the Court, Petitioner's Motion is hereby GRANTED.

## Background

In June, 2004, the Supreme Court ruled that the District Court had jurisdiction to consider aliens' "*habeas corpus* challenges to the legality of their [executive] detention at the Guantanamo Bay Naval Base." *Rasul v. Bush*, 542 U.S. 466, 484 (2004). In compliance with *Rasul*, the Government began in late 2004 to notify detainees of their right to challenge the legality of their detention in federal court. (Second Sweigart Decl. ¶¶ 2-5.)[3] The "DoD notification"[4] instructs detainees that they may challenge their detention "through a process called *a petition for a writ of*

---

"pertaining to interpretation or construction of any protective order" entered in any of the Guantanamo *habeas* cases to the undersigned for resolution pursuant to LCvR 72.2(a). A party may seek reconsideration of a ruling by a magistrate judge within 10 days after being served with the magistrate judge's order. LCvR 72.2(b). Rulings issued by a magistrate judge pursuant to LCvR 72.2 are reviewed by the district court judge, in this case Judge Bates, on a "clearly erroneous" or "contrary to law" standard. LCvR 72.2(c).

[3]*Attached as* Exhibit A to Resp'ts' Mot. for an Order to Show Cause Why Case Should not be Dismissed for Lack of Proper "Next Friend" Standing, September 23, 2005, Dkt. No. 2.

[4]The Department of Defense (DoD) issued three different types of notifications to detainees, depending on whether the detainee had been determined 1) an enemy combatant whose status may be reviewed by the Administrative Review Board (ARB), 2) an enemy combatant not eligible for ARB consideration because he is triable by Military Commission, or 3) a non-enemy combatant. (Second Sweigart Decl. ¶¶ 3-5, Exs. A-C.) Although each notification contains slightly different information, all three contain the same two paragraphs informing detainees of their right to seek review of the legality of their detention.

*habeas corpus*,"[5] and explains that they may *either* file a petition themselves *or* they "may ask a friend or family member or a lawyer to file such a petition with the court."[6] (*Id.*, Exs. A-C.*)*

At some point prior to mid-March 2005, Petitioner Muhammed Qasim asked a fellow detainee, Isa Ali Al Murbati, to help him find a lawyer to challenge his detention at the United State Naval Base in Guantanamo Bay, Cuba ("Guantanamo"). (*See* Al-Murbati Authorization, *attached as* Ex. 1 to Memorandum Re Order on Motion to Show Cause, Nov. 18, 2005, Dkt. No. 9.) Al-Murbati forwarded Petitioner's name to his attorneys at Dorsey Whitney, LLP, along with the names of two other detainees who had also asked him for help. (*Id.*) Al-Murbati's attorneys then forwarded Petitioners' names to the Center for Constitutional Rights, a national public interest organization that has coordinated *pro bono* representation for the majority of Guantanamo detainees. Counsel then sought to meet with Petitioners in person, only to be denied by Respondents on the grounds that counsel had provided insufficient evidence of their authority to represent the detainees. Petitioners now seek an order compelling Respondents to

---

[5]The notification fails to provide any explanation of what a petition for *habeas corpus* is or how a detainee would go about getting one. (Sweigart Decl., Exs. A-C.) Some detainees were apparently so confused about what to do with the notice that they "simply mailed the entire [blank] sheet itself back to the court because they did not know what else to do to get legal assistance." (Gutierrez (Kabir) Decl. ¶ 12, Mot., Ex. D.)

[6] The notification instructs detainees to write to the District Court in order to challenge their detention, but provides little in the way of explanation about what detainees should write:

> If you do not have a lawyer or a family member or friend who could file this petition for you, you may file your own petition. According to prior court rulings, petitions should be sent to:
> United States District Court for the District of Columbia
> 333 Constitution Ave., NW
> Washington, DC 20001.

Second Sweigart Decl., Exs. A-C.

permit them access to their clients, in part so they may obtain the very authorization of representation that Respondents insist be provided prior to any visits.

## Analysis

I.    *Interpretation of the Protective Order*

Under the Protective Order, any counsel who represents a detainee must provide evidence of that representation. *See* Revised Procedures for Counsel Access, ¶ III.C, *attached as* Exhibit A to the Amended Protective Order. With respect to the narrow question of the timing of counsel's submission of that evidence, Respondents raise the same objections they previously raised under virtually identical circumstances. (*See* Opp'n at 4-5; Mot. for Reconsid. at 25-30, *attached as* Ex. A to Opp'n.) Essentially, Respondents argue that solely for those detainees who initially filed through a "next friend," the phrase "evidence of authority to represent a detainee" implies two distinct sets of evidence submitted at two different stages. (Mot. for Reconsid. at 25-26 (arguing that Protective Order implicitly requires "a two-layer requirement regarding counsel's authority to bring and then maintain" a *habeas* petition.))

This Court has already rejected Respondents' arguments many times over, as have other District Court Judges. *See Adem v. Bush*, 425 F. Supp. 2d 7, 20-23 (D.D.C. 2006), *aff'd*, No. 05-723, 2006 WL 1193853 at *3-7 (D.D.C. April 28, 2006); *Kabir v. Bush*, 05-1704 (D.D.C. May 11, 2006) (memorandum order granting motion to compel counsel access); *Said v. Bush*, 05-2384 (D.D.C. May 23, 2006) (same), *aff'd*, Minute Order of May 26, 2006; *Razakah v. Bush*, 05-2370 (D.D.C. May 18, 2006) (EGS) (order granting motion for access to counsel); *Mohammon v. Bush*, No. 05-2386, Order at 4 n.5, Dkt. No. 66 (D.D.C. June 27, 2006) (RBW) (rejecting government's argument that allegedly defective next friend standing strips court of authority to grant access to

counsel); *Mohammon v. Bush*, No. 05-2386, Order at 2, Dkt. No. 108 (D.D.C. July 26, 2006) (RBW) (granting motion for access to counsel for the purpose of verifying detainee's request for counsel).

At this time, the Court sees no basis to depart from its previous rulings.  Briefly, a plain reading of the Protective Order clearly dictates that Petitioner's counsel must submit the requisite evidence of authority to represent that detainee within 10 days of counsel's second visit.  See *Adem*, 425 F. Supp. 2d at 21-23; *Razakah v. Bush*, 05-2370, Order at 4-5 (EGS) (D.D.C. May 18, 2006).  The Protective Order does require counsel for a detainee to take certain steps before they may meet with client.  Counsel must obtain the necessary security clearances, sign a memorandum of understanding acknowledging counsel's agreement to abide by the terms of the Protective Order, and provide DoD with a "Notification of Representation" that includes counsel's licensing information, business contact information and the name of the detainee being represented by counsel.  See Revised Procedures for Counsel Access, ¶¶ III.A, B & C.1.  The Protective Order does not, however, require a detainee to submit the equivalent of a signed retainer before he may meet with a lawyer.  See *Adem*, 2006 WL 1193853, at *7 (D.D.C. April 28, 2006) ("[r]equiring a Guantanamo detainee to identify a specific lawyer from among all the volunteer lawyers -- most of whom are unknown to the detainee before a meeting -- is a meaningless exercise.  It would be unconscionable to tether a detainee's access to counsel to such an unworkable prerequisite").

Respondents' interpretation would require the Court to ignore the plain meaning of the text of the Protective Order and to flaunt the most basic rules of construction.  See *Adem*, 425 F. Supp. 2d at 22-23, *aff'd*, 2006 WL 1193853, at *4-6 (affirming magistrate judge's opinion and rejecting government's argument that evidence of authority to represent a detainee referred to a

"two-step sequential showing"). The Court cannot infer a separate two-step requirement applicable solely to 'next friend' petitions out of thin air. *See id.* at 20-23 (interpreting protective order); *see also Armstrong v. Executive Office of the President*, 830 F. Supp. 19, 22 (D.D.C. 1993) ("[g]iving plain meaning to [the] language" of the protective order).

Respondents insist that, absent Petitioner's signature on a form, the alleged lack of proper next friend standing precludes this Court from further inquiring into the truth of Petitioner's request to challenge his detention.[7] The Court's authority to investigate Petitioner's request is not so constrained. *See Mohammon v. Bush*, No. 05-2386, Order at 2, Dkt. No. 108 (D.D.C. July 26, 2006) (RBW) (granting motion for access to counsel solely for the purpose of verifying detainee's request for counsel). Petitioners are "entitled to present the facts surrounding their confinement to the Court. It is equally clear that the Court is authorized to craft the procedures necessary to make this possible, in order that the Court might fully consider Petitioners' challenge to their detention." *Al Odah v. United States*, 346 F. Supp. 2d 1, 7 (D.D.C. 2004).

Until revoked or modified, the Protective Order remains in effect, and the Court has inherent power to enforce its own lawful orders. *See Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006). Absent evidence that Petitioner's requests are not genuine, they are entitled to meet with their lawyers, in part so they may obtain the very authorization of representation that Respondents insist be provided prior to any visits. If, within 10 days of

---

[7]Respondents assert that by allowing detainees to meet with their counsel in-person, if only to confirm the detainee's request for representation in the first place, the Court ignores Respondents' efforts to inform detainees' of their right to contact the Court or counsel directly. (*See* Mot. for Reconsid. at 34-35.) To the contrary, the Court is well aware of these efforts. Unfortunately, the steps taken by Respondents to notify detainees of their right to contact counsel and the Court have been largely ineffective. *See Adem*, 425 F. Supp. 2d at 14-18 & nn.18-22.

counsel's second visit, the requisite evidence is not forthcoming, Respondents motion to dismiss for lack of proper "next friend" standing would then be ripe.

*II.     Jurisdiction*

Respondents' contention that Section 1005(e)(1) of the Detainee Treatment Act of 2005 (the "DTA") divests federal courts of jurisdiction to hear any *habeas* petition filed by a Guantanamo detainee has been rendered moot by the Supreme Court's decision in *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2769 n.15 (2006).  Although Respondents concede this point, they now argue that jurisdiction over Petitioner's *habeas* petition is nonetheless barred by the exclusive review provisions of the DTA.  (*See* Notice Regarding Steps Taken in the Wake of the Supreme Court's Recent Decision in *Hamdan v. Rumsfeld* at 2-3, Dkt. No. 18, July 7, 2006.)   The DTA vests "the District of Columbia Circuit Court of Appeals with exclusive authority to review the validity of any final decision of a Combatant Status Review Tribunal [CSRT] that an alien is properly detained as an enemy combatant." § 1005(e)(2).

The Court need not reach the question of whether a *habeas* petition challenging the very legitimacy of the CSRTs – a question far beyond the narrow confines of Section 1005(e)(2) – would nevertheless be bundled into the Circuit's exclusive jurisdiction when paired with a challenge to a final decision of a CSRT.  *See Hamdan*, 126 S. Ct. at 2769 (finding "nothing absurd about a scheme" that creates two separate systems of review for challenges to detainees' confinement); *id.* at 2815 (Scalia, J., dissenting) (criticizing majority for creating a "dual-review mechanism" for *habeas* petitions pending on the date of the DTA's enactment).  Even prior to the Supreme Court's decision in *Hamdan*, the question of when, and under what circumstances the existing Protective Order permits Petitioners to meet with their lawyers simply had no bearing on

the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention. *See Nasrullah v. Bush*, 05-891 (D.D.C. June 12, 2006) (RBW) (entering Protective Order for purposes of granting petitioners access to counsel and rejecting government's argument that the Detainee Treatment Act divested District Court of its authority to appoint counsel to represent Guantanamo Bay detainees); *Al Salami v. Bush*, 05-2452 (D.D.C. April 13, 2006) (PLF) (explaining that "[d]etainees' right to meet with counsel under the Protective Order is independent of the (still-unresolved) question of the Court's jurisdiction to rule on their *habeas* petitions").

  Furthermore, Respondents' argument that the DTA had stripped the District Court of authority even to appoint counsel was premised on the validity of Section 1005(e)(1), which purported to strip federal courts of jurisdiction to hear any *habeas* petition brought by an alien detained in Guantanamo. Respondents argued that because detainees' right to counsel was grounded in the federal *habeas* statutes as described in *Al Odah v. United States*, 346 F. Supp. 2d 1, 5-6 (D.D.C. 2004) (finding entitlement to counsel pursuant to the "the federal habeas statute, 28 U.S.C. § 2241, the Criminal Justice Act, 18 U.S.C. § 3006A, and the All Writs Act, 28 U.S.C. § 1651"), the DTA therefore stripped the District Court of authority to appoint counsel along with its authority to hear any *habeas* petition in the first instance. (See Mot. for Reconsid. at 21.) This argument is now moot in light of the Supreme Court's holding that Section 1005(e)(1) is not retroactive. *See Hamdan*, 126 S. Ct. at 2762-69.

  Finally, it is well-settled that until such time as jurisdiction is determined not to exist, the District Court has the authority to issues such orders as necessary to preserve its own jurisdiction and to maintain the status quo. *See United States v. United Mine Workers of America*, 330 U.S. 258, 290-93 (1947). The status quo includes the integrity of the Protective Order, painstakingly

negotiated by the parties and approved by the District Court, which remains binding and in effect in those cases in which it has been entered.  "[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *see also Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (recognizing courts' "inherent power to enforce compliance with their lawful orders"); *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (same); *cf. Gambale v. Deutsche Bank, AG*, 377 F.3d 133, 140-41 (2d Cir. 2004) (recognizing court's jurisdiction to modify protective orders that remain in effect, even after dismissal of the underlying litigation); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (same), *cert. denied, Am. Special Risk Ins. Co. v. Rohm & Haas Co.*, 498 U.S. 1073 (1991). It would be untenable for the District Court to be put in a position where it is powerless to enforce its own Protective Order, presently in effect and over which it has continuing control.

Therefore, it is hereby, this _2nd_ day of August, 2006

ORDERED that Respondents shall comply with the Protective Order and allow counsel to meet with the Petitioner as soon as possible.

SO ORDERED.

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE