### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MUHAMMED QASIM, *et al.*,<br><br>  Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>  Respondents. | Case No. 1:05-cv-1779 (JDB)<br><br>**PETITIONER'S MEMORANDUM IN OPPOSITION TO RESPONDENTS' EMERGENCY MOTION FOR STAY AND RECONSIDERATION OF MAGISTRATE JUDGE'S AUGUST 2, 2006 MEMORANDUM** |

### Introduction

Muhammed Qasim, ("Petitioner") hereby opposes the Respondents' Emergency Motion for Stay and Reconsideration of Magistrate Judge's August 2, 2006 Memorandum, filed August 11, 2006 (dkt. no. 25; "Respondents' Motion").

Petitioner is imprisoned at the United States Naval Station, Guantánamo Bay, Cuba, ("Guantánamo"). Having no meaningful way to secure legal representation for himself, but informed by a Notification from Department of Defense ("DoD") that he could ask a friend or lawyer to file a petition for him, Petitioner asked a friend and fellow detainee to contact his lawyer so as to initiate a challenge. As a result, Petitioner's Habeas Corpus Petition ("Petition") was filed by counsel on September 6, 2005.

Although almost a year has passed since the Petition was filed, Respondents still have not permitted counsel to communicate with Petitioner. The Respondents' maneuvers, including the

1

instant Respondents' Motion, are designed to block Petitioner's access to counsel, and his right

to have the Court "hear [his] habeas corpus challenges to the legality of [his] detention." *Rasul*

*v. Bush*, 542 U.S. 466, 483 (2004). Respondents have filed nearly identical motions in countless

other cases before this Court, and to date not a single one has been granted. All judges to have

ruled on these motions have rejected the Respondents' arguments. Indeed, Respondents in their

instant motion simply attached and incorporated the arguments from their identical motion filed

in another case, and that motion was just rejected by the Court on August 7, 2006. *See Kiyemba*

*v. Bush*, No. 05-CV-1509 (D.D. C. Aug. 7, 2006) (RMU), Memorandum Order Denying the

Respondents' Motion for Reconsideration of Magistrate Judge's Order (dkt No. 82).

Judge Kay ruled that Respondents must comply with the Protective Order and allow

counsel to meet with Petitioner as soon as possible. Kay Order at 9. This Memorandum seeks to

affirm that decision. Petitioner respectfully requests that the Court deny Respondents' Motion in

its entirety and affirm the Kay Order, as it is neither clearly erroneous nor contrary to law.

## Background

In March 2005, Petitioner, who does not speak English, asked a fellow detainee who does

speak English, Isa Ali Al-Murbati, to help him find a lawyer to challenge his potentially

indefinite imprisonment without charge. *See* Al-Murbati Authorization, March 17, 2005

(attached as Exhibit 1 to Petitioners' Memorandum Showing Cause why Petition for Writ of

*Habeas Corpus* should not be dismissed for lack of "Next Friend" Standing, filed Nov. 18, 2005

(dkt no 9)). Al-Murbati forwarded Petitioner's name to his own attorneys at Dorsey Whitney,

LLP, along with the names of two other detainees who had also asked him for help. *Id*. Al-

Murbati's attorneys conveyed Petitioner's request for counsel to the Center for Constitutional

Rights ("CCR").

2

Counsel with CCR filed the Petition both as a "direct" petition and as a "next friend" petition through Petitioner's next friend Al-Murbati on September 6, 2005. (dkt no. 1). Counsel also filed Notice of Appearance (by Gitanjali Gutierrez) (dkt no. 8), and sought access to Petitioner (dkt nos. 9, 14, 16). This Court referred all motions pertaining to the interpretation and construction of any protective order to Magistrate Judge Alan Kay. (dkt no. 5). This Court also transferred to Judge Louis F. Oberdorfer Respondents' Motion for Order to Show Cause Why Case Should not Be Dismissed for Lack of Proper "Next Friend" Standing (dkt nos. 2, 4). On November 4, 2005, Judge Oberdorfer ordered Petitioners and Respondents to consult with Judge Kay regarding counsel obtaining access to the detainees "who allegedly seek to be represented by next friends to determine if the detainees will authorize counsel to represent them directly." Order to Show Cause, Nov. 4, 2005 (dkt no. 6). On July 20, 2006, this Court entered the Protective Order "previously entered in the other Guantánamo detainee cases," but expressed "no judgment" regarding compliance with and enforcement of the protective order, which remained pending before Judge Kay. (Minute Order July 20, 2006). Copies of the Protective Order are attached to Petitioners' Motion to Enforce Order of November 4, 2005 Granting Access to Counsel and For Entry of Protective Order, filed on April 11, 2006. (dkt. no. 14).

On August 2, 2006, Judge Kay issued a Memorandum Order granting the Motion for Access to Counsel, directing that "Respondents shall comply with the Protective Order and allow counsel to meet with the Petitioner as soon as possible." (Kay Order at 9). Undersigned counsel entered their Notice of Appearance on August 8, 2006, and notified Respondents that they wished to meet with Petitioner during a visit to Guantánamo that was already scheduled for

August 21 - 24, 2006. Respondents then filed the instant emergency motion, seeking to stay or to reconsider Judge Kay's order granting counsel access.[1]

### Judge Kay's Order

Respondents' Emergency Motion presents a straightforward issue of interpretation. The Protective Order is in the nature of a contract between counsel for detainees and counsel for the Respondents. Since no party has claimed that the Protective Order is ambiguous, Judge Kay properly construed the plain language of the order in light of the circumstances surrounding its entry. *See Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000) (applying contract construction principles to interpretation of protective order).

Judge Kay addressed the narrow question -- discussed at length in recent opinions -- whether a detainee's right to meet with counsel is conditioned on counsel providing direct, written evidence of his or her authority to represent the detainee *before* a visit, or whether such evidence may be provided *after* meeting with the detainee. In so doing, Judge Kay specifically interpreted two paragraphs of the Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantánamo Bay, Cuba, Annexed to the Protective Order as Exhibit A, dealing with requirements for verification of representation.

---

[1] Respondents' Motion gratuitously asserts that counsel's request to meet with Petitioner "amounts to counsel taking advantage of a previously-scheduled visit to Guantánamo Bay by entering an appearance on behalf of an additional detainee in another case and seeking to add him to a confirmed visit schedule on a last-minute basis . . ." Respondents' Motion at 1-2. In fact, counsel was only seeking to meet with Petitioner "as soon as possible," in the words of Judge Kay, because of the unconscionable delay of over one year that Petitioner has already suffered since he filed his request for legal help. Petitioner still has no way even of knowing that he has an attorney representing him, or that anyone even received the letter stating he wanted a lawyer, sent in March, 2005. Any additional delay in permitting counsel to meet with Petitioner will only make even more difficult the already daunting task of developing the trust necessary for an attorney-client relationship under these extraordinary circumstances.

Judge Kay rejected Respondents' argument that the evidence of authority to represent the detainee must be provided before counsel is permitted access to the detainee, stating that the plain terms of the Protective Order do not "require a detainee to submit the equivalent of a signed retainer before he may meet with a lawyer," and concluding that only Notification of Representation must be provided in advance of obtaining access.  Kay Order at 5.  Judge Kay also rejected Respondents' contention that a separate two-step requirement applies to "next friend" petitions.  Noting that the Protective Order does not distinguish between cases filed by a next friend and cases filed directly, Judge Kay reasoned that the Court could not infer such a separate requirement "out of thin air."  Kay Order at 6.  The judge thus concluded that "[a]bsent evidence that Petitioner's requests are not genuine, they are entitled to meet with their lawyers, in part so they may obtain the very authorization of representation that Respondents insist be provided prior to any visits."  Kay Order at 6.

Finally, Judge Kay rejected Respondents' jurisdictional argument -- that the Detainee Treatment Act of 2005 (the "DTA") divested the Court of jurisdiction to decide the Petitioners' Emergency Motion -- concluding that "the question of when, and under what circumstances the existing Protective Order permits Petitioners to meet with their lawyers simply [has] no bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention. Kay Order at 7-8.  As Judge Kay explained, "the District Court has the authority to issue such orders as necessary to preserve its own jurisdiction and to maintain the status quo."  Kay Order at 8.

**Argument**

A.      **Respondents' Motion For Reconsideration Should Be Denied Because The Kay Order Is Neither Clearly Erroneous Nor Contrary To Law.**

Fed. R. Civ. P. 72 provides that non-final, pretrial rulings of a magistrate of the kind at issue here cannot be overruled unless there has been an abuse of discretion or a plain error of law.  Rulings issued by a magistrate judge are reviewed by the district court judge pursuant to LCvR 72.2 under a "clearly erroneous" or "contrary to law" standard.  *Adem v. Bush*, Civ. No. 05-723 slip op. (D.D.C. Apr. 28, 2006) (RWR), 2006 WL 1193853 at * 3.  Given the nature of the issues, the care and thoroughness of the Kay Order, and the endorsement of Judge Kay's reading by Judge Roberts in *Adem v. Bush*, Respondents cannot meet the governing standard.

1.      **The Kay Order is not contrary to law because the DTA does not eliminate this Court's jurisdiction over the Petition.**

Contrary to Respondents' assertion, *see* Resp. Motion at 2-3, the DTA does not strip this Court of jurisdiction over the Petition.  Petitioner challenges his prolonged, indefinite detention as violating his due process rights under the common law and the Fifth Amendment to the Constitution of the United States, as well as procedures established by the Third and Forth Geneva Conventions and International Humanitarian and Human Rights law, and asserts, as well, that the conditions of his confinement violate the law of nations under the Alien Tort Statute, 28 U.S.C. §1350.  Thus, the relevant provision of the DTA governing Petitioners' claims is section 1005(e)(1).  As the Supreme Court held in its recent decision in *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006), section 1005(e)(1) "addresses jurisdiction in *habeas* cases and other actions 'relating to any aspect of the detention.'"  126 S. Ct. at 2767.  *Hamdan*, which also involved a *habeas* petition that was pending prior to the enactment of the DTA, squarely held

6

"that § 1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment." *Id.* at 2769 n.15. This Court has since applied *Hamdan* in determining that it has jurisdiction to hear and determine *habeas* petitions and related matters brought by Guantánamo detainees. *See Hamoud v. Bush*, No. 05-1894 (RWR), Memorandum Order, p. 1 n.1 (July 5, 2006) (dkt. no. 23) (citing *Hamdan* as making clear that it has authority over Guantánamo detainee's *habeas* petition and challenge to stay of proceedings).

Sections 1005(e)(2) and (e)(3) of the DTA – the provisions relied upon by the Respondents, *see* Resp. Motion at 13-15 -- have no bearing on the claims at issue here. As the Supreme Court recognized, "subsections (e)(2) and (e)(3) grant jurisdiction only over actions 'to determine the validity of any final decision' of a CSRT or commission." *Hamdan*, 126 S. Ct. at 2767. Thus, a petitioner who is "not contesting any 'final decision' of a CSRT or military commission . . . does not fall within the scope of subsection (e)(2) or (e)(3)." *Id*. Moreover, the Supreme Court explicitly rejected Respondents' argument that section 1005(e)(2) creates an "exclusive review" mechanism in the D.C. Circuit Court of Appeals that precludes Petitioners determined by the CSRT to be enemy combatants from seeking *habeas* relief in the district courts. Specifically, the Supreme Court noted, "There is nothing absurd about a scheme under which pending habeas actions—particularly those, like this one, that challenge the very legitimacy of the tribunals whose judgments Congress would like to have reviewed—are preserved, and more routine challenges to final decisions rendered by those tribunals are carefully channeled to a particular court and through a particular lens of review." *Id.* at 2769. Any interpretation of the DTA that would preclude judicial review of Petitioner' constitutional claims would raise substantial constitutional questions. *See Hamdan*, 126 S. Ct. at 2769 n.15. (noting that construing a statute to "preclude review of a pure question of law by any court

7

would give rise to substantial constitutional questions") (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001)).

Respondents' attempt to cast Petitioner's claims as nothing more than a challenge to the validity of his CSRT decision subject to the jurisdiction-stripping provision of section 1005(e)(2) fails. As noted, Petitioner does not merely seek to challenge "the validity of" his CSRT determinations but more broadly asserts that there is no legal basis for his detention. Therefore, Respondents cannot rely on the Court's statement in *Hamdan* that "[t]here may be habeas cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3)," 126 S. Ct. at 2769 n.14, to apply the jurisdictional stripping provision of Section 1005(e)(2) here. Petitioner's broad statutory and constitutional claims cannot possibly be construed as a challenge to a "final decision" of the CSRT and under no viable construction fall within the purview of sections 1005(e)(2) or (e)(3).

As all other courts addressing the issue have held, moreover, Petitioner's right to meet with counsel under the terms of the Protective Order is "independent of the Court's jurisdiction." *Razakah v. Bush*, No. 05CV2370 (EGS), Order at 3 (May 18, 2006) (dct no. 23); *see also Kiyemba v. Bush*, No. 05CV1509 (RMU) Memorandum Order at 3 (Aug. 7, 2006) (dct no. 82); *Al Salami v. Bush*, 05-2452 (D.D.C. April 13, 2006 (PLF) ("Detainees right to meet with counsel under the Protective Order is independent of the (still unresolved) question of the Court's jurisdiction to rule on their *habeas* petitions."); *Adem v. Bush*, 2006 WL 751309 at *8 (D.D.C. Mar. 21, 2006) (RWR) (holding that access to counsel issues pursuant to Protective Order do not implicate any jurisdictional questions currently pending); *Nasrullah v. Bush*, 05-891 (RBW),

Order at 2 (June 12, 2006) (dkt. no. 18) ("[T]he court is not persuaded that granting a protective order enabling the petitioner to have access to counsel would in any way intrude or infringe upon the Court of Appeals' [possible] exclusive jurisdiction."); *Doe v. Bush*, No. 05-CV-1704 (JR)(LFO)(AK), Memo. Order at 13 (May 11, 2006) (dkt. no. 33) ("Petitioners' motion for an order compelling access to counsel pursuant to the Amended Protective Order, however, does not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court.").

This Court undoubtedly has the power to enforce its own Protective Order during the pendency in the Court of Appeals of the jurisdictional question the Respondents claim is presented by the DTA. *See Broderick v. Donaldson,* 437 F.3d 1226, 1234 (D.C. Cir. 2006) (power of enforcement is "inherent" to the court); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("A protective order, like any ongoing injunction, is always subject to the inherent power of the district court."); *see also Doe v. Bush*, Memo. Op. at 11 (May 11, 2006) (holding that the Protective Order remained in effect, as Respondents conceded, and that the court had inherent authority to enforce it).

In enforcing the terms of the existing Protective Order, the Court acted well within its authority to maintain the status quo in a case pending resolution of questions of its own jurisdiction. *United States v. United Mine Workers*, 330 U.S. 258, 292 (finding that the district court retained power to maintain the status quo and punish violations of an injunction until the question of its jurisdiction was resolved); *Application of President & Dir. of Georgetown College, Inc.*, 331 F.2d 1000, 1005 (D.C. Cir. 1964) ("[W]hether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was 'authority from the

necessity of the case to make orders to preserve the existing conditions and the subject of the petition.'") (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906)).

Respondents contention that the Kay Order went far beyond what was necessary to maintain the status quo and constitutes a "radical reversal of long-standing practice under the Access procedures," *see* Resp. Motion, Exhibit A, at 15, is patently untrue and inconsistent with this Court's prior rulings. *See infra* Part A.2. The Kay Order did no more than enforce existing procedures embodied in the Protective Order to enable Petitioner to exercise his right to counsel recognized by this Court in *Al-Odah*. The Petition is properly before this Court, which "is authorized to craft the procedures necessary" for Petitioner to present his case, including "the authority to appoint counsel." *Al Odah*, 346 F. Supp. 2d. at 7. Respondents' contrary arguments have no basis in law and the Respondents' Motion should be denied.

2.    **The Kay Order complies with the plain language of the Protective Order and this Court's prior interpretations thereof and, therefore, is neither clearly erroneous nor contrary to law.**

Contrary to Respondents' arguments, *see* Resp. Motion, Exhibit A, at 19-31, Magistrate Judge Kay's interpretation of the Protective Order comports with the plain language of the Order, as well as its history and context. Respondents' arguments are entirely insufficient to mandate reconsideration of the Kay Order.

Respondents' arguments as to the "proper" interpretation of the Protective Order were fully addressed and rejected by Magistrate Judge Kay in a lengthy and thorough opinion in *Adem v. Bush*, 425 F. Supp. 2d 7 (D.D.C. 2006) (RWR)(AK), which District Judge Richard W. Roberts affirmed on April 28, 2006, *see Adem v. Bush*, 2006 WL 1193853. Because Respondents refused to accept either decision, Judge Kay was obliged to enter substantially the same rulings

10

regarding the counsel access provisions under the Protective Order on May 11, 2006, in *Doe v. Bush*, Civ. No. 05-1704 (JR)(LFO)(AK), and again on June 29, 2006, in *Kiyemba v. Bush*, Civ. No. 05-1509 (RMU), and again in this case on August 2, 2006. Moreover, this same Protective Order has been entered after passage of the DTA in numerous other detainee cases[2] and consistently construed according to its plain terms -- clearly demonstrating its continued propriety and vitality.

As with interpreting a statute, the starting point for interpreting a court order is the plain meaning of the text. *See BedRoc Limited, LLC v. United States*, 541 U.S. 176, 183 (2004) (if text is unambiguous, "the inquiry begins with the statutory text and ends there"); *Armstrong v. Executive Office of President*, 830 F. Supp. 19, 22 (D.D.C. 1993) (giving "plain meaning" to

---

[2] In addition to the instant case, Protective Orders have been entered after passage of the DTA in the following 29 cases: *Al-Sopai v. Bush*, 05-cv-1667 (D.D.C., Jan. 4, 2006) (Walton); *Khiali-Gul v. Bush*, 05-cv-877 (D.D.C., Jan. 6, 2006) (Robertson); *Bostan v. Bush*, 05-cv-883 (D.D.C., Jan. 9, 2006) (Walton); *Mohammad v. Bush*, 05-cv-879 (D.D.C., Jan. 9, 2006) (Walton); *Wahab v. Bush*, 05-cv-886 (D.D.C., Jan. 10. 2006) (Sullivan); *Labed Ahmed v. Bush*, 05-cv-1234 (D.D.C., Mar. 2, 2006) (Sullivan); *Almerfedi v. Bush*, 05-cv-1645 (D.D.C., Mar. 6, 2006) (Friedman); *Razakah v. Bush*, 05-cv-2370 (D.D.C., Mar. 17, 2006) (Sullivan); *Thabid v. Bush*, 05-cv-2398 (D.D.C., Mar. 21, 2006) (Huvelle); *Ahmed v. Bush*, 05cv1234 (D.D.C., Mar. 21, 2006) (Sullivan); *Awad v. Bush*, 05-cv-2379, (D.D.C. Apr. 11, 2006) (Robertson); *Al Shareef v. Bush*, 05-cv-2458 (D.D.C., Apr. 12, 2006) (Roberts); *Alsaaei v. Bush*, 05-cv-2369 (D.D.C., Apr. 12, 2006) (Roberts); *Said v. Bush*, 05-cv-2384 (D.D.C., Apr. 12, 2006) (Roberts); *Zadran v. Bush*, 05-cv-2367 (D.D.C., Apr. 12, 2006) (Roberts); *Al Salami v. Bush*, 05-cv-2452 (D.D.C. Apr. 14, 2006) (Friedman); *Faizullah v. Bush*, 05-cv-01489 (D.D.C. April 21, 2006) (Urbina); *Sohail v. Bush*, 05-cv-00993 (D.D.C. April 21, 2006) (Urbina); *Al-Ghizzawi v. Bush*, 05-cv-02378 (D.D.C., June 2, 2006) (Bates); *Amon v. Bush*, 05-cv-1493 (D.D.C., June 6, 2006) (Walton); *Nasrullah v. Bush*, 05-cv-00891 (D.D.C., June 12, 2006) (Walton); *Al-Khalaqi v. Bush*, 05-cv-999 (D.D.C., June 15, 2006) (Walton); *Mohammon v. Bush*, 05-cv-2386 (D.D.C., June 27, 2006) (Walton); *Haleem v. Bush*, 05-cv-2376 (D.D.C., June 30, 2006) (Walton); *Al Darby v. Bush*, 05-cv-2371 (D.D.C., July 3, 2006) (Lamberth); *Al Harbi v. Bush*, 05-cv-2479 (D.D.C., July 5, 2006) (Kennedy); *Muhibullah v. Bush*, 05-cv-884 (D.D.C., Aug. 1, 2006) (Collyer); *Nabil v. Bush*, 05-cv-1504 (D.D.C., Aug. 1, 2006) (Collyer); *Aboassy et al v. Bush*, 05-cv-0748 (.D.D.C., Aug. 1, 2006) (Collyer).

language of protective order).  The plain language of the Protective Order refutes the

Respondents' arguments.  The language at issue is as follows:

> C.     Verification of Representation
>
> 1.     Prior to being permitted access to the detainee, counsel must
> provide DoD with a *Notification of Representation*.  This
> Notification must include the counsel's licensing information,
> business and email addresses, and phone number, as well as the
> name of the detainee being represented by the counsel.
> Additionally, counsel shall provide evidence of his or her authority
> to represent the detainee.
>
> 2.     Counsel shall provide evidence of his or her authority to represent
> the detainee as soon as practicable and in any event no later than
> ten (10) days after the conclusion of a second visit with the
> detainee.  The Court recognizes that counsel may not be in position
> to present such evidence after the initial meeting with a detainee.

Amended Protective Order and Procedures for Counsel Access to Detainees at the United States

Naval Base in Guantánamo Bay, Cuba, Exhibt A, at 2-3.

The Respondents rely on the fact that the Protective Order uses the terminology, "counsel

shall provide evidence of his or her authority to represent the detainee," in two different

paragraphs to support their contention that the term must mean two different things and must

require two separate submissions.  Respondents' Motion, Exhibit A, at 20-21.  This, they

contend, means the Protective Order "contemplates a two-layer requirement" under which, in

cases involving a "next friend" petition, counsel must provide proof of authority to represent

*prior to* any visit with the detainee, then, within ten days of the second visit, provide an

additional, direct authorization of representation from the detainee. *Id.*

But as Judge Roberts explained when he rejected the Respondents' interpretation,

"identical phrases are presumed to have identical meaning."  *Aden*, 2006 WL 1193853 at *5

(citing *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (referring to an applying the "normal rule of

[textual] construction that identical words used in different parts of the same [text] are intended to have the same meaning")). Thus, Judge Roberts agreed with Judge Kay's conclusion that the two identical phrases in the two adjacent paragraphs "refer to a single standard to be made in a single showing." *Id.* Since the specific governs the general, "the detail in the second paragraph specifying **when** the required evidence must be provided simply modifies the bare announcement in the first paragraph that such evidence would be required." *Id.* Not only does the plain language of the Protective Order *not* require a showing of direct evidence of authorization to represent a detainee as a prerequisite to an in-person meeting, as Respondents contend, but "[r]equiring a Guantánamo detainee to identify a specific lawyer from among all the volunteer lawyers -- most of whom are unknown to the detainee before a meeting -- is a meaningless exercise. It would be unconscionable to tether a detainee's access to counsel to such an unworkable prerequisite." *Id.* at *7.

Judge Roberts also held that Respondents' "two-layer" interpretation of the Access Procedures verification requirements in cases presenting "next friend" habeas petitions contravenes the clear language of the Protective Order, since the order makes no separate provision based on the "next friend" status of any petition. As Judge Roberts notes, these procedures "do not even mention the next-friend device." *Id.* at *6. Furthermore, because the plain language of the Protective Order is susceptible of a straightforward interpretation, the history and context of the text also is "unavailing." *Id.*

The Respondents' "two-layer" interpretation would create the perfect Catch-22. It would make it virtually impossible for counsel to visit or represent Petitioner since the very proof of authorization the Respondents would require *prior* to a first visit can only be obtained *during* a visit with Petitioner. Thus, without the authorization, counsel would not be able to visit

Petitioner, and without a visit, counsel would not be able to obtain the authorization. The Protective Order cannot reasonably be interpreted as erecting such an insurmountable procedural hurdle to counsel access.

The use of the term "next friend" in the context of this case, moreover, is misleading. As Judge Kay noted in *Adem*, the DoD Notification to detainees regarding their *Rasul* right to file a habeas petition expressly told them that they could file a petition themselves, or they could "ask a friend or family member or lawyer to file such a petition with the court." 425 F. Supp. 2d at 14. Thus, the Notification itself implied that these alternatives were simply different methods of filing the same type of petition. For this reason, although the government uses the term "next friend, . . . in reality [Al-Murbati] is simply a 'friend' who, at the explicit invitation of the Department of Defense, communicated [Qasim's] direct request for counsel to help him challenge his detention to his lawyer. Once [Qasim] confirms his desire for counsel to his own lawyers, [Al-Murbati] will play no further role in the case." *Id.* at 23-24.[3]

As District Judge Robert's concluded, Magistrate Judge Kay's rulings are based upon on the Protective Order's plain language and well-established rules of construction and are "well-supported in fact and law." *Adem v. Bush*, 2006 WL 1193853 at *5. Moreover, the very reason for the Protective Order was to provide uniform procedures for counsel access and representation of Guantánamo detainees, and the very reason for referring disputes regarding its interpretation to one Judge was likewise to maintain a uniform interpretation of these procedures. The counsel

---

[3] Judge Kay's reasoning and his Order granting counsel access, it should be noted, are fully consistent with Judge Oberdorfer's effort to resolve the "next friend" issue in the instant case. Judge Oberdorfer directed that Petitioners and Respondents to consult with Judge Kay regarding counsel obtaining access to the detainees "who allegedly seek to be represented by next friends to determine if the detainees will authorize counsel to represent them directly." Order to Show Cause, Nov. 4, 2005 (dkt no. 6).

access procedures would simply be unworkable and chaotic if they varied, depending upon which judge was assigned to the habeas petition. Accordingly, since the Kay Order is neither clearly erroneous nor contrary to law and since it reflects the uniform interpretation of all judges who have ruled on the issue, Respondents' Motion for Reconsideration should be denied.

### 3.    Respondents have mischaracterized the Kay Order's findings and effect.

Respondents argue that the Kay Order breaks from established precedent by "invent[ing] a new, third option for [*habeas*] standing," Resp. Motion at 26; that Judge Kay's critiques of the Respondents' notification efforts are unsupported, *id.* at 27-29; and that the "prejudicial impact" of the interpretation of the Access Procedures is "significant," *id.* at 30. These arguments exaggerate the work of this Court.

Judge Kay's Order does not, as the Respondents' suggest, Resp. Motion, Exhibit A, at 26-27, actually create *habeas* jurisdiction. Kay's interpretation requires that Notification of Representation be filed in advance of obtaining client access and mandates that proper authorization, next friend or otherwise, be submitted within ten days of the second meeting. Not only does this interpretation comport with the plain language of the Protective Order, it is also accounts for the communication difficulties and notification obstacles for detainees at Guantánamo.

Respondents also criticize Kay for his "critique" of their notification efforts. Resp. Motion, Exhibit At, at 27-29. No "legal basis" is necessary for the observation that the Government's notifications have been ineffectual. Aside from practical difficulties such as language and communication barriers, it is almost incomprehensible that a detainee, operating from a cell in Guantánamo with no knowledge of the United States legal system, and who may not even have access to pen and paper, is capable of filing a petition for *habeas corpus*. The

challenge is great enough for teams of skilled lawyers representing the detainees on the pending cases. Kay's Order permitting counsel to meet with Petitioners, "in part so they may obtain the very authorization of representation that Respondents insist be provided prior to any visits," is true to the letter and spirit of the Protective Order. Kay Order at 5. To hold otherwise would render the Order's Access Procedures hollow promises.

Respondents' complaint that the Order forces it "to provide direct, privileged access to a wartime detainee in a military detention facility by counsel merely purporting to represent a detainee, without an appropriate showing by counsel of proof of appropriate authority to represent the detainee," Resp. Motion, Exhibit A, at 31-32, is simply untrue. First, Respondents have, in fact, reversed their position on counsel access. Previously the Government complied with the Protective Order by allowing counsel, even in the case of a "next friend," at least two visits before insisting upon written evidence of authority. *See Adem v. Bush*, 425 F. Supp. 2d at 13 (noting that [f]rom the time the Protective Order was first entered until approximately mid-summer 2005, the Government raised no objection to the practice of detainees initiating a habeas petition through a fellow detainee who was a friend because once the detainee confirmed his request for counsel, the question of 'next friend' standing was moot"; citing cases). Second, all counsel who meet with detainees have had to obtain security clearances, and are bound by the terms of the Protective Order. These factors mitigate against any security risk. Finally, there is ample (and uncontroverted) evidence that this Petitioner wants a lawyer. Respondents will suffer no harm by permitting counsel to confirm Petitioner's desire by asking him in person if he still wants representation.

16

**B.    The Motion To Stay Should Be Denied Because The Potential Irreparable Harm To Petitioner Outweighs Respondents' Interest In Maintaining The Status Quo.**

Petitioner is now in what is probably his fifth year of imprisonment -- a man who has never been charged with any crime, who contends that he has never been a soldier or otherwise hostile to America.[4]  As recent as June 10, 2006, three Guantánamo detainees, who evidently had despaired of ever receiving hearings, committed suicide at the base.  *See generally* James Risen & Tim Golden, *3 Prisoners Commit Suicide at Guantánamo*, N.Y. TIMES, June 11, 2006, at A1. An officer at Guantánamo has said that he expects more suicide attempts.  *See* Michael Gordon, *Officer Expects More Suicide Tries: Guantánamo Bay Colonel Says Homemade Nooses Seized*, CHARLOTTE OBSERVER, June 12, 2006, at 1A ("'We have indications of more attempts any time now,' said [Colonel Michael] Bumgarner.").  Despite Respondents' persistent efforts to delay visitation and maintain the "status quo," undersigned counsel are deeply concerned for the welfare of the Petitioner.  Those attorneys who have been to Guantánamo have observed the despair that is rampant there, along with the conviction among detainees that American justice is a fiction.  Access to the Petitioner has never been more crucial.

Allowing counsel to visit Petitioner is nothing more than routine enforcement of a valid Protective Order.  The Government's tired rhetoric does not change that fact.  Accordingly, the Court should immediately affirm Magistrate Judge Kay's order so that counsel may proceed "as soon as possible" to Guantánamo and provide Petitioner with much anticipated legal representation.

---

[4]As this Court stated in *Adem* and *Doe*, with respect to the year-plus battle of the petitioners in those cases to secure counsel, "[i]t is simply unacceptable to wait any longer."  *See Adem v. Bush*, Civ. No. 05-723, Memo. Opinion, at 22-23 (Mar. 14, 2006); *Doe v. Bush*, Civ. No. 05-1704, Memo. Order, at 13 (May 11, 2006).

**Conclusion**

For the foregoing reasons, the Kay Order is neither clearly erroneous nor contrary to the law.  Petitioner respectfully urges this Court to deny Respondents' Motion for Reconsideration and affirm the August 2, 2006 Memorandum Order of Magistrate Judge Kay, directing Respondents to permit counsel access to Petitioner.

Respectfully submitted,

/s/Billy H. Nolas
Billy H. Nolas (DC 399275; PA 83177)
Assistant Federal Defender
Maureen Rowley (PA 33020)
Chief Federal Defender
David McColgin (PA 42963)
Shawn Nolan (PA 56535)
Assistant Federal Defenders
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520; (215) 928-1100

Dated: August 18, 2006

Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been served

via the e-filing system on the following counsel of record for respondents:


Mr. Terry Henry
Ms. Preeya M. Noronha
US DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 7226
Washington, DC 20529-0001


/s/Billy H. Nolas
Billy H. Nolas


Dated:  August 18, 2006