IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MUHAMMED QASIM, *et al.*, )<br><br>Petitioners, )<br><br>v. )<br><br>GEORGE W. BUSH,<br>President of the United States,<br>*et al.,* )<br><br>Respondents. ) | Civil Action No. 05-CV-1779 (JDB) |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION FOR STAY AND RECONSIDERATION OF
MAGISTRATE JUDGE'S AUGUST 2, 2006 MEMORANDUM ORDER**

Respondents hereby submit the following reply memorandum in support of their motion

for stay and reconsideration of Magistrate Judge Alan Kay's August 2, 2006 Memorandum Order

("August 2 Memorandum Order") requiring that respondents permit counsel to meet with

petitioner Muhammed Qasim, who is detained by the Department of Defense ("DoD") at the

United States Naval Base in Guantanamo Bay, Cuba.  For the reasons stated herein and in

Respondents' Emergency Motion for Stay and Reconsideration of Magistrate Judge's August 2,

2006 Memorandum Order ("Resps' Mot."), the Magistrate Judge's Memorandum Order should

be set aside, and in any event, should be stayed pending the resolution of respondents' motion to

reconsider the Order.[1]

---

[1]  Petitioners cite decisions by other Judges of this Court which denied reconsideration of
similar Orders issued by the Magistrate Judge ordering counsel access in cases pending before
them.  See, e.g., Adem v. Bush, No. 05-CV-0723 (RWR), 425 F. Supp. 2d 7 (D.D.C. Mar. 21,
2006) (dkt. no. 36), recons. denied, 2006 WL 1193853 (Apr. 28, 2006) (dkt. no. 42); Kiyemba v.
Bush, No. 05-CV-1509 (RMU), slip op. (Jun. 29, 2006) (dkt. no. 60), recons. denied, 2006 WL
2255736 (Aug. 7, 2006) (dkt. no. 82); Thabid v. Bush, No. 05-CV-2398 (ESH), slip op. (Aug. 2,

Petitioners argue that, in ordering respondents to permit counsel access to petitioner Qasim, the Magistrate Judge properly determined that the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), was not implicated.  See Petitioners' Memorandum in Opposition to Respondents' Emergency Motion for Stay and Reconsideration of Magistrate Judge's August 2 Memorandum Order ("Pets' Opp.") at 6-10.  Petitioners contend that section 1005(e)(2) of the Act, which creates an exclusive review mechanism in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," made expressly applicable to pending cases, has "no bearing on the claims at issue here" since petitioner Qasim "does not merely seek to challenge 'the validity' of his CSRT determination but more broadly asserts that there is no legal basis for his detention."  Id. at 7-8.  Petitioner Qasim, however, has been determined, in a "final decision" of a CSRT, to be an enemy combatant.  Therefore, petitioner, in challenging the lawfulness of his detention as an enemy combatant, is necessarily challenging the "validity" of the final CSRT decision that he "is properly detained as an enemy combatant."  Act, § 1005(e)(2)(A).  Petitioners' claims thus fall squarely within the substantive scope of section 1005(e)(2) of the Act.[2]  In any event, the effect of the Act on cases such as this remains pending

---

2006) (dkt. no. 18), recons. denied, slip op. (Aug. 17, 2006) (dkt. no. 22).  See also Razakah v. Bush, No. 05-CV-2370 (EGS) (May 18, 2006) (dkt. no. 23).  For the reasons stated herein and in respondents' motion for reconsideration, these decisions disregard serious jurisdictional issues presented by the Guantanamo habeas cases, improperly interpret the language and effect of the Protective Order and its subsidiary Access Procedures applicable in the cases, and ignore serious separation of powers concerns.  These decisions, therefore, should not be persuasive to this Court.

[2]  Indeed, section 1005(e)(2) permits review of petitioner Qasim's constitutional and statutory challenges to his detention, which were raised and fully briefed in related appeals pending before the D.C. Circuit.  See Act, § 1005(e)(2)(C) ("to the extent the Constitution and

before the Court of Appeals, and the impact of the Supreme Court's recent decision in <u>Hamdan</u> <u>v. Rumsfeld</u>, 548 U.S. ___, 126 S. Ct. 2749 (2006), on that issue is the subject of supplemental briefing in the Court of Appeals that was completed on August 15, 2006. Thus, although respondents maintain that the August 2 Memorandum Order is erroneous and should be set aside, at a minimum, the effect of the Order should be stayed until the D.C. Circuit provides guidance regarding the effect of the Act on this case.

Petitioners further contend that the Magistrate Judge correctly found that "Petitioner's right to meet with counsel under the terms of the Protective Order is 'independent of the Court's jurisdiction,'" Pets' Opp. at 8-9, and that the Magistrate Judge "did no more than enforce existing procedures embodied in the Protective Order to enable Petitioner to exercise his right to counsel recognized by this Court in *Al Odah*." Pets' Opp. at 10. As explained in respondents' motion for reconsideration, however, notwithstanding the Act's withdrawal of this Court's jurisdiction to proceed further with regard to any aspect of this habeas action by investing exclusive jurisdiction over this action in the Court of Appeals, the Court has no authority to order counsel access by "enforcing" the Protective Order, <u>see</u> Pets' Opp. at 9, because, by their terms, the Protective Order and its subsidiary Access Procedures do not order, require, or compel respondents to permit a counsel visit with a detainee. <u>See</u> Resps' Mot., Ex. A at 15-17. The Access Procedures are incorporated into the Protective Order "to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information." Access Procedures, ¶ 6. While the Access Procedures certainly operate with the assumption that counsel

_____

laws of the United States are applicable, [the Court of Appeals will review] whether the use of such standards and procedures to make the determination is consistent with the Constitution and laws of the United States").

visits will occur in that they set the terms and procedures applicable to any such visits, they do not themselves compel respondents to provide such visits on demand of counsel.  Thus, the Court cannot rely upon "enforcement" of the terms of the Protective Order as the basis for compelling respondents to permit a counsel visit in this case.

Petitioners also argue that the Access Procedures' "two-layer requirement" regarding counsel's authority to bring and then maintain the lawsuit was properly rejected by the Magistrate Judge because such a requirement is inconsistent with the plain language of the Protective Order and "would make it virtually impossible for counsel to visit or represent Petitioner since the very proof of authorization the Respondents would require *prior* to a first visit can only be obtained *during* a visit with Petitioner."  Pets' Opp. at 13.  To the contrary, in addition to remaining consistent with the plain language, history and context of the Protective Order and Access Procedures as they have been applied in the Guantanamo habeas cases, see Resps' Mot., Ex. A at 19-25, this two-layer requirement does not unreasonably create "an insurmountable procedural hurdle to counsel access," as petitioners suggest.  Pets' Opp. at 13-14.  Rather, as explained in respondents' motion for reconsideration, this two-layer requirement, which already has been ostensibly satisfied by well over 200 detainees at Guantanamo Bay on whose behalf petitions for writ of habeas corpus were filed by individuals seeking to act as their "next friends," is consistent with the jurisdictional standing requirements of the habeas statute, 28 U.S.C. § 2242, and the Supreme Court's decision in Whitmore v. Arkansas, 495 U.S. 149, 163 (1990).  See Resps' Mot., Ex. A at 25-31; see also Respondents' Motion for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing (dkt. no. 2) ("Resps' Mot. for Order to Show Cause") at 5-13.  The law provides only two avenues by which a habeas petition may be

properly brought: (1) the individual who is seeking habeas relief must sign and verify the

petition, i.e., the petition must be directly authorized; or (2) the petition must be signed and

verified by another person acting on that individual's behalf – a "next friend" – whom the

Supreme Court has determined must satisfy certain requirements in order to properly serve in this

capacity. See Whitmore, 495 U.S. at 163-64. In this case, the petition was not directly

authorized by petitioner Qasim, even though dozens of other detainees at Guantanamo Bay have

directly authorized petitions for writ of habeas corpus on their own behalf as a result of

reasonable mechanisms provided by respondents for detainees to contact the Court or a source

for counsel should they desire to do so.[3] See Resps' Mot., Ex. A at 28-30; Resps' Mot. for Order

to Show Cause at 6-8. Thus, the petition in this case must be signed and verified by a legitimate

"next friend" acting on petitioner Qasim's behalf in order for the petition to be properly before

this Court. Given that Isa Ali Al-Murbati, a fellow detainee who is the next friend petitioner in

this action, has failed to satisfy the Whitmore requirements for next friend standing, see Resps'

Mot. for Order to Show Cause at 6-13, notwithstanding the effect of the Detainee Treatment

Act,[4] the Court cannot exercise jurisdiction over this action.[5]

---

[3] These mechanisms include notifying the detainees of their ability to send mail indicating the desire to challenge their detention directly to the Court, to a lawyer, or to family members and friends who may seek to satisfy the Supreme Court's requirements for next friend standing as expressed in Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990). See Resps' Mot., Ex. A at 28-30; Resps' Mot. for Order to Show Cause at 6-8 & Ex. D. In addition, detainees who indicate to Guantanamo personnel that they desire a lawyer are provided a form in their own language (or are read the form in their language if they are illiterate) to request a lawyer from the American Bar Association. See id. The fact that dozens of detainees have taken advantage of these mechanisms undermines the Magistrate Judge's conclusion that they are "ineffectual." See Pets' Opp. at 15-16.

[4] Because, as explained above and in respondents' motion for reconsideration, the Magistrate Judge's Order implicates serious jurisdictional issues independent of the Detainee

Furthermore, the Magistrate Judge's Order cannot legitimately be grounded in any authority of the Court under Judge Kollar-Kotelly's decision in <u>Al Odah v United States</u>, 346 F. Supp. 2d 1 (D.D.C. 2004), which the Magistrate Judge believed permitted the Court to craft procedures necessary to enforce a right to counsel to pursue a petition, <u>see</u> August 2 Memorandum Order at 8. The basis of the <u>Al Odah</u> decision rested not on any absolute right to counsel, but on a court's discretionary, statutory authority in habeas cases to appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted. See <u>Al Odah</u>, 346 F. Supp. 2d at 4-5, 7-8 (citing 18 U.S.C. § 3006A). That authority under the habeas statute is no longer applicable given the investment of exclusive jurisdiction over this action in the Court of Appeals.[6] Further, <u>Al Odah</u> did not, as here, involve any issue as to whether a habeas case was

---

Treatment Act, this is not a matter in which "the outcome . . . ultimately would be the same regardless of the [Detainee Treatment Act's] jurisdictional question," <u>see</u> August 9, 2006 Memorandum Opinion and Order in <u>Mangut v. Bush</u>, No. 05-CV-1008 (JDB), at 3, not related to the merits, such that the Court's reasoning in <u>Mangut</u> would apply.

[5] Petitioners also claim that the Magistrate Judge correctly relied upon the reasoning in Judge Roberts's decision in <u>Adem</u>, which determined that respondents were imposing an "unconscionable" and "unworkable" demand by requiring that detainees "identify a specific lawyer from among all the volunteer lawyers – most of whom are unknown to the detainee before a meeting . . . ." <u>See</u> Pets' Opp. at 13 (citing April 28, 2006 Memorandum Opinion and Order in <u>Adem v. Bush</u>, No. 05-CV-0723 (RWR), 2006 WL 1193853, at *7); <u>see also</u> August 2 Memorandum Order at 5. To the contrary, respondents have never required that detainees "identify a specific lawyer" in order to authorize a challenge to their detention at Guantanamo Bay. As demonstrated above, respondents make no such demand, but rather have provided reasonable mechanisms, consistent with the jurisdictional requirements in habeas cases, for detainees to contact the Court or a source for counsel should they desire to do so.

[6] As explained in respondents' motion for reconsideration, the Act's investment of exclusive jurisdiction over this action in the Court of Appeals applies to all aspects of this case, including counsel access issues. <u>See</u> Resps' Mot., Ex. A at 12-14. <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."). Consequently, the Magistrate Judge had no legal authority to issue the prospective relief ordered in this case.

6

properly pending before the Court, so as to support counsel's direct access to a detainee. The

case had been filed by family member next friends who had retained counsel, and respondents

did not object to providing counsel access; merely the monitoring of counsel-detainee meetings

was at issue. See Al Odah, 346 F. Supp. 2d at 4-5 ("[T]he Court has confined its present inquiry

to the attorney access issues that uniquely affect the three named Petitioners in this case.

Accordingly, the Court considers whether the Government can impose real time monitoring on

the three Petitioners."). Thus, the Magistrate Judge's reliance on authority to permit counsel

access independent of the Court's jurisdiction is erroneous, and the August 2 Memorandum

Order should therefore be set aside.

Petitioners contend that respondents' position in this matter is untenable because

respondents previously allowed counsel access to detainees in cases where other detainees sought

habeas relief on their behalf without satisfaction of the next friend standing requirements. See

Pets' Opp. at 16-17. Petitioners further assert that there is no harm in permitting counsel to meet

with petitioner Qasim to "confirm" that he desires representation, and that any security risks with

such a visit are minimal given that all counsel must obtain security clearances before being

granted privileged access to detainees. See id. Although respondents initially permitted counsel

access in some of the first cases filed with ostensible next friend standing deficiencies,

respondents changed their practice as these improper petitions surged in number and it became

apparent that this phenomenon was simply a mechanism by which counsel were attempting to

abuse the next friend device, in effect, in order to solicit the detainee population for clients,

without giving any consideration to satisfying jurisdictional requirements. Given that the

purported next friends typically have minimal knowledge about the detainees on whose behalf

they are attempting to seek habeas relief, these deficient next friend cases presented the practical

and very significant problem of identifying the detainees for whom habeas relief is sought,[7] and

have also resulted in increasing occurrences of allegedly represented detainees refusing to meet

with attorneys who travel to Guantanamo Bay to meet them, which taxes the already

overburdened resources of the Military at Guantanamo Bay, and wastes the time and expense of

counsel.  Requiring petitions to be properly authorized – either directly by the detainee or

through a valid next friend – would likely alleviate some of the very real practical problems

resulting from the deficient jurisdiction.  Thus, because the rising phenomenon of detainees

seeking habeas relief on behalf of other detainees exhibited a blatant disregard for the

jurisdictional requirements of the habeas statute as well as resulted in a number of practical

problems in the litigation, respondents began challenging the standing of the next friend

petitioners in these cases.  In any event, the circumstances of when or how respondents elected to

challenge the standing of petitioners with deficient next friend standing, as in this case, or

permitted counsel visits to Guantanamo Bay to continue pending anticipated guidance from the

D.C. Circuit in cases where petitioners are properly represented, is of no moment, since

respondents cannot waive a challenge to the Court's jurisdiction.  See Floyd v. District of

---

[7] Given the names or aliases of many of the approximately 450 individuals detained at Guantanamo Bay, it is difficult, if not impossible to correctly identify detainees based on the scant identifying information provided in these next friend petitions.  Respondents are often left trying to guess at a detainee's identity.  Indeed, respondents have yet to identify more than 100 purported petitioners as individuals presently detained at Guantanamo Bay.  Moreover, there have already been at least four instances in which respondents incorrectly identified petitioners in Guantanamo Bay detainee cases or petitioners' counsel asserted an improper identification by respondents; matters which, unfortunately, were not discovered until counsel visited and interviewed the subject detainees at Guantanamo Bay.

Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived" and the Court has "an independent obligation to assure" itself of jurisdiction).

Moreover, respondents should not be required to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent the detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements. The Magistrate Judge's extra-legal approach regarding the minimal showing sufficient to bring a petition before the Court could permit virtually any attorney to file suit asserting that they represent a detainee and thereby require the government to provide them privileged access to the detainee. Even if counsel's ability to claim authority to represent a detainee were cabined by having to receive word of a detainee's desire for counsel through a purported "friend" of the detainee, that arrangement could lead to detainees effectively initiating habeas petitions on behalf of, with concomitant required counsel access to, any detainee they recall once having a conversation with that gave the "friend" the inkling that the other detainee might want a lawyer or might want to challenge his detention. The separation of powers concerns implicated in such an arrangement of compelled access to wartime detainees in a military detention facility, at the behest of other such detainees, are substantial. Such an arrangement flies in the face of fundamental standing and jurisdiction concepts in the law of habeas corpus.[8]

---

[8] Furthermore, respondents have confronted a number of violations of the Protective Order by counsel with security clearances, some with serious implications to the security of the base and its mission, which have been addressed on a case-by-case basis. The Magistrate Judge's Order, which requires the government to provide direct, privileged counsel access to wartime detainees in a military detention facility without establishing that a proper petition has been filed, not only poses serious jurisdictional and separation of powers concerns, but also increases the possibility of such violations, intentional or advertent, in the future.

***

For the reasons stated herein and in respondents' motion for stay and reconsideration, the Magistrate Judge's August 2 Memorandum Order is contrary to law and clearly erroneous. Accordingly, the Memorandum Order should be set aside, and in any event, should be stayed pending resolution of the serious jurisdictional and other issues raised in respondents' motion for reconsideration.

Dated:  August 23, 2006                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           DOUGLAS N. LETTER
                                           Terrorism Litigation Counsel

                                               /s/ Preeya M. Noronha
                                           _____
                                           JOSEPH H. HUNT (D.C. Bar No. 431134)
                                           VINCENT M. GARVEY (D.C. Bar No. 127191)
                                           TERRY M. HENRY
                                           JAMES J. SCHWARTZ
                                           PREEYA M. NORONHA
                                           EDWARD H. WHITE
                                           ROBERT J. KATERBERG
                                           ANDREW I. WARDEN
                                           NICHOLAS J. PATTERSON
                                           MARC A. PEREZ
                                           Attorneys
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Ave., N.W.
                                           Washington, DC  20530
                                           Tel:  (202) 514-4107
                                           Fax:  (202) 616-8470

                                           Attorneys for Respondents

10